UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| PRYSMIAN CABLES AND SYSTEMS, USA, LLC<br><br>          Plaintiff,<br><br>  - against -<br><br>UNITED STATES<br><br>          Defendant. | Case No.    24-00101<br><br>**COMPLAINT** |

Plaintiff PRYSMIAN CABLES AND SYSTEMS, USA, LLC ("Prysmian"), by its undersigned attorneys, Frost Brown Todd LLP, for its Complaint against Defendant United States, acting by and through the U.S. Department of Commerce (the "Department"), alleges as follows:

## NATURE OF LAWSUIT

1.    In March 2018, the President, acting pursuant to Section 232 of the Trade Expansion Act of 1962, as amended (19 U.S.C. § 1862), issued a proclamation imposing a ten percent (10%) tariff on aluminum imports (the "Proclamation"). *See* Adjusting Imports of Aluminum Into the United States, Pres. Proc. No. 9704, Fed. Reg. 11,619 (Mar. 8, 2018). The President's Proclamation recognized that these tariffs could have unintended consequences for U.S. businesses that rely on imports of aluminum products not otherwise immediately available in the domestic market. The Proclamation therefore expressly directed the Department to grant exclusions from these new Section 232 tariffs to U.S.-based businesses for imported aluminum products that are not immediately available in sufficient quality and quantity in the United States.

2.    According to the Department, the purpose of the exclusion mechanism was:

> [T]o protect downstream manufacturers that rely on products not produced by U.S. domestic industry at this time. The guiding principle is that, if U.S. domestic industry does not or will not produce a given . . . aluminum product of the quality needed by users

in the United States, companies that rely on those products will not
pay duties on them.

Submissions of Exclusion Requests and Objections to Submitted Requests for Steel and
Aluminum, 83 Fed. Reg. 46,026, 46,038–39 (Sept. 11, 2018).

3.      Prysmian manufactures conductive cable providing essential conductive
connectivity critical to electrical power generation, transmission, and distribution in overhead,
underground, and underwater applications in the United States. To manufacture conductive cable,
Prysmian requires a stable source of various specifications of aluminum rod of a particular quality
and composition. Because domestic production of said aluminum rod is insufficient to meet their
current domestic production needs, Prysmian must procure hundreds of millions of kilograms of
the rod from various companies in other countries.

4.      Since March 2018, Prysmian has made concerted efforts to pursue domestically
produced aluminum rod, and thereby limit the application of the Section 232 tariffs on their
business operations. For example, Prysmian obtained quotes from Magnitude 7 Metals, LLC
("M7M"). However, M7M's aluminum rod mill was acquired by Alubar Metals Inc. ("Alubar")
before negotiations could conclude, and Alubar has only recently begun U.S. operations. Despite
these sorts of setbacks, Prysmian remains committed to pursuing opportunities to purchase
domestically produced aluminum rod and will continue to do so going forward. Indeed, Prysmian
is now purchasing aluminum rod from Alubar.

5.      Until U.S. production increases, Prysmian must continue to rely on aluminum rod
procured from various companies in other countries to manufacture its conductive cable. Prysmian
and its former sister company, GENERAL CABLE INDUSTRIES, INC. ("General Cable), have
therefore applied for narrowly tailored exclusions from the Section 232 aluminum tariffs so that
they could continue to help provide essential conductive connectivity while awaiting increased

2

domestic production. On January 1, 2022, General Cable was merged into Prysmian and therefore Prysmian is the successor-in-interest to General Cable.

6.      Despite the foregoing, the Department ignored the record evidence establishing that the aluminum rod Prysmian and General Cable procure from various companies in other countries is not sufficiently available in the U.S. market, and instead issued the same boilerplate denial to most of their exclusion requests. As a result, Prysmian and General Cable have paid tens of millions of dollars in tariffs from which they should have rightfully been exempted. In denying the exclusion requests filed by Prysmian and General Cable, the Department blindly yielded to the baseless complaints of their direct competitor, Southwire Company, LLC ("Southwire"), which objected to every exclusion request they filed. In objecting, their direct competitor claimed, often without corroboration, that sufficient quantities of domestically produced aluminum rod were available.

7.      In sustaining their direct competitor's objections, the Department undertook no effort to verify Southwire's claims, ignored the conclusive evidence that Southwire could not—and indeed would not—satisfy the needs of Prysmian and General Cable, and failed even to offer any reasoned basis for its decisions. Thus, the Department effectively abandoned the standards established by Proclamation 9704 and the Department's own regulations, thereby depriving Prysmian and General Cable of their rights to due process and fair treatment. In short, the Department's actions were arbitrary, capricious, and an abuse of discretion, in flagrant violation of the Administrative Procedure Act. *See* 5 U.S.C. §§ 701 *et seq.*

## **JURISDICTION**

8.      This Court has exclusive jurisdiction over this action pursuant to 28 U.S.C. § 1581(i)(1)(B) and (D) because it concerns claims against the United States or its agencies arising

out of laws concerning "tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue" and the "administration and enforcement" of such laws.

## **PARTIES AND STANDING**

9.      Prysmian is a subsidiary of General Cable Corporation ("GCC"), and Prysmian is headquartered in Highland Heights, Kentucky. Prior to January 1, 2022, Prysmian and General Cable were sister companies, with General Cable merging into Prysmian on that date. Prysmian is seeking the relief herein on behalf of itself and as successor-in-interest to General Cable.

10.     Defendant is the United States of America, acting by and through the Department.

11.     Prysmian manufactures conductive cable providing essential conductive connectivity critical to electrical power generation, transmission, and distribution in overhead, underground, and underwater applications in the United States.

12.     To manufacture this conductive cable, Prysmian requires a stable source of certain aluminum rods of particular quality and composition.

13.     Because there is insufficient domestic production to meet its current domestic demands, Prysmian must procure hundreds of millions of kilograms of said aluminum rod from various companies in other countries.

14.     Despite insufficient domestic production of said aluminum rod, the Department has wrongfully denied requests for exclusions from the Section 232 aluminum tariffs filed by Prysmian and General Cable, as contemplated by 5 U.S.C. § 706(2)(A) (empowering the reviewing court to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.").

15.     Due to the Department's wrongful denials, Prysmian and General Cable were forced to pay tens of millions of dollars arising from Section 232 aluminum tariffs, and have therefore been adversely affected or aggrieved by agency action within the meaning of 5 U.S.C. §

702 ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . is entitled to judicial review thereof.").

## BACKGROUND

### A.    Statutory and Regulatory Background

16.    Section 232 of the Trade Expansion Act of 1962 authorizes the Secretary of Commerce (the "Secretary"), in coordination with the Secretary of Defense, to undertake an investigation "to determine the effects on the national security of imports" of any articles. 19 U.S.C. § 1862(b)(1)(A).

17.    Upon completing this investigation, the Secretary must provide the President with a report advising whether the articles under investigation are "being imported into the United States in such quantities or under such circumstances as to threaten to impair the national security." *Id.* § 1862(3)(A).

18.    If the President concurs with the Secretary's finding that a threat exists, the President shall "determine the nature and duration of the action that, in the judgment of the President, must be taken to adjust the imports of the article and its derivatives so that such imports will not threaten to impair the national security." *Id.* § 1862(c)(1)(A)(ii).

19.    Pursuant to Section 232, on March 8, 2018, President Trump issued a proclamation imposing a ten percent (10%) tariff on most aluminum imports based upon recommendations from the Secretary. *See* Adjusting Imports of Aluminum Into the United States, Pres. Proc. No. 9704, Fed. Reg. 11,619 (Mar. 8, 2018).

20.    In issuing this proclamation, the President noted the Secretary's findings "that the present quantities of aluminum imports and the circumstances of global excess capacity for producing aluminum are 'weakening our internal economy,' leaving the United States 'almost totally reliant on foreign producers of primary aluminum' and 'at risk of becoming completely

reliant on foreign producers of high-purity aluminum that is essential for key military and ***commercial systems***'" and "the risk that the domestic aluminum industry would become 'unable to satisfy existing national security needs or respond to a national security emergency that requires a large increase in domestic production.'" *Id.* (emphasis added).

21.     However, based upon those findings, the Secretary also recommended that the President "authorize him, in response to specific requests from affected domestic parties, to exclude from any adopted import restrictions those aluminum articles for which the Secretary determines there is a lack of sufficient domestic production capacity of comparable products, ***or*** to exclude aluminum articles from such restrictions for specific national security-based considerations." *Id.* (emphasis added).

22.     Based upon this further recommendation, the President authorized the Secretary to grant exclusions at the request of a "directly affected party located in the United States." *Id.* at 11,621.

23.     Specifically, the President authorized the Secretary to "provide relief . . . for any aluminum article determined not to be produced in the United States in a sufficient and reasonably available amount." *Id.* at 11621.

24.     The President also authorized the Secretary to "provide such relief based upon specific national security considerations." *Id.*

25.     On March 19, 2018, the Department, through the Bureau of Industry and Security ("BIS"), issued an interim final rule (codified at 15 C.F.R. pt. 705, supp. 1) setting forth the circumstances in which the Department would grant a tariff exclusion to directly affected United States businesses.

26.     Following a notice and comment period, on September 11, 2018, the Secretary supplemented the rules for tariff exclusion requests. *See* Submissions of Exclusion Requests and Objections to Submitted Requests for Steel and Aluminum, 83 Fed. Reg. 46,026 (Sept. 11, 2018).

27.     The rule adopted by the Department sets forth the procedures for affected parties to request tariff exclusions and provides that domestic producers may object if they are capable of promptly providing the imported product in the United States.

28.     The Department's rule provides that aluminum is "not produced in the United States in a sufficient and reasonably available amount" if:

> the amount that is needed by the end user requesting the exclusion is not available immediately in the United States to meet its specified business activities. Available "immediately" means that a product (whether it is currently being produced in the United States, or could be produced in the United States) can be delivered by a U.S. producer "within eight weeks", or, if that is not possible, by a date earlier than the time required for the requester to obtain the entire quantity of the product from the requester's foreign supplier.

15 C.F.R. pt. 705, supp. 1(c)(6)(i).

29.     The Department's rule further defines when an aluminum product is "not produced in the United States in a satisfactory quality," with a specific definition for "substitute product":

> The exclusion review criterion "not produced in the United States in a satisfactory quality" does not mean the steel or aluminum needs to be identical, but it does need to be equivalent as a substitute product. "Substitute product" for purposes of this review criterion means that the steel or aluminum being produced by an objector can meet "immediately" (see paragraph (c)(6)(i) of this supplement) the quality (e.g., industry specs or internal company quality controls or standards), regulatory, or testing standards, in order for the U.S.-produced steel to be used in that business activity in the United States by that end user.

*Id.* pt. 705, supp. 1(c)(6)(ii).

30.     The Department's rule plainly and sensibly places the burden on objectors to demonstrate that they can produce the "substitute product" within the requisite timeframe:

> The objection should clearly identify, and provide support for, its opposition to the proposed exclusion, with reference to the specific basis identified in, and the

support provided for, the submitted exclusion request. If the objector is asserting that it is not currently producing the . . . aluminum identified in an exclusion request but can produce the . . . aluminum and make that . . . aluminum available "immediately" in accordance with the time required for the user of . . . aluminum in the United States to obtain the product from its foreign suppliers, the objector must identify how it will be able to produce and deliver the quantity of . . . aluminum needed either within eight weeks, or if after eight weeks, by a date which is earlier than the named foreign supplier would deliver the entire quantity of the requested product. . . . This requirement includes specifying in writing to Department of Commerce as part of the objection, the timeline the objector anticipates in order to start or restart production of the steel included in the exclusion request to which it is objecting.

*Id.* pt. 705, supp. 1(d)(4).

31.    The Department's rule also provides that "[t]he exclusion review criterion 'or for specific national security considerations' is intended to allow the . . . Department . . . to make determinations whether a particular exclusion request ***should be approved*** based on specific national security considerations," such as "the unintended impacts that may occur in . . . downstream industries using aluminum." *Id.* pt. 705, supp. 1(c)(6)(iii)(B) (emphasis added).

32.    The Department's rule with respect to "specific national security considerations" is plainly disjunctive per its invocation of "or," i.e., even if an objector can produce the "substitute product" within the requisite timeframe, the aluminum article can be excluded based upon "specific national security considerations." *Id.*

33.    The Department's rule with respect to "specific national security considerations" also plainly limits the Department's authority to approval of exclusions based upon such considerations, per its invocation of "approved." In other words, the Department does not have the authority to *refuse* to exclude the aluminum article based upon such considerations. *Id.*

34.    Finally, the Department's rule with respect to "specific national security considerations" is bound to the findings set forth in the Secretary's initial recommendation. *See supra* Pres. Proc. No. 9704, Fed. Reg. 11,619.

**B.      Requests for Exclusion from Section 232 Tariffs**

35.      In 2018, Prysmian filed a request for an exclusion from the Section 232 tariff for certain aluminum rod procured from various companies in Canada, Bahrain, and Argentina, limited to 1350 aluminum rod with a specific diameter and tensile strength range and a minimum conductivity and aluminum composition, received in coil form with a specific weight range. *See* BIS-2018-0002-0257.

36.      In 2018, General Cable filed a request for an exclusion from the Section 232 tariff for certain aluminum rod procured from Midal Cables Ltd. in Bahrain, limited to 1350 aluminum rod with a specific diameter, a tensile strength range, and a minimum aluminum composition. *See* BIS-2018-0002-0502.

37.      On April 26, 2019, General Cable filed seven requests for exclusions from the Section 232 tariff for certain aluminum rod procured from various companies in Canada, Bahrain, Russia, and United Arab Emirates, with a significant amount manufactured by General Cable's sister company, General Cable Company LTD., in Canada.  These requests pertained to 1350, 6201, and 8030 aluminum rod of varying diameters and tensile strengths. *See* BIS-2018-0002-20758, BIS-2018-0002-20759, BIS-2018-0002-20760, BIS-2018-0002-20761, BIS-2018-0002-20762, BIS-2018-0002-20763, and BIS-2018-0002-20764.

38.      On April 26, 2019, Prysmian filed two requests for exclusions from the Section 232 tariff for certain aluminum rod procured from Canada, Bahrain, Russia, and Argentina, with a significant amount manufactured by General Cable's sister company, General Cable Company LTD., in Canada.  These exclusion requests were limited to 1350 and 8176 aluminum rod of varying diameters and tensile strengths. *See* BIS-2018-0002-20765 and BIS-2018-0002-20766.

39.     On August 6, 2020, General Cable filed two renewed requests for exclusions from the Section 232 tariff for the same aluminum rod addressed in BIS-2018-0002-20759 and BIS-2018-0002-20764. *See* Request # 121434 and Request # 121447.

40.     On August 6, 2020, Prysmian filed a renewed request for exclusion from the Section 232 tariff for the same aluminum rod that was addressed in BIS-2018-0002-20765. *See* Request # 121444.

41.     On November 10, 2021, General Cable filed two renewed requests for exclusions from the Section 232 tariff for the same aluminum rod addressed in BIS-2018-0002-20759/ Request # 121434 and Request # 121447. *See* Request # 261098 and Request # 261115.

42.     Also on November 10, 2021, Prysmian filed a renewed request for an exclusion from the Section 232 tariff for the same aluminum rod that was addressed in BIS-2018-0002-20765. *See* Request # 261137.

43.     The following table summarizes the various exclusion requests filed by Prysmian and General Cable and the corresponding date of rulings from the Department:

| Number | Filing Date | Description | Harmonized Tariff Schedule Code | Ruling Date |
|--------|-------------|-------------|--------------------------------|-------------|
| BIS-2018-0002-0257 (Prysmian) | 2018 | 3/8" within a range of (9.02 - 9.91mm) Aluminum Redraw Rod, Alloy 1350 H-12 with a tensile strength of between 83 - 110 Mpa and a minimum conductivity % IACS of 61.5 and contains a minimum of 99.5% aluminum. Received in coil form with a weight between 2000 - 4000 metric tons. | 7605110030 | May 4, 2019 |

| | | | | |
|---|---|---|---|---|
| BIS-2018-0002-0502 (General Cable) | 2018 | Aluminum wire. Primary Aluminum EC Grade Wire, for redraw, in coils. A1350 Dia: 9.5mm (AL 99.7% min); Tensile Strength: 110-130 Mpa | 7605110030 | April 19, 2019 |
| BIS-2018-0002-20758 (General Cable – Rod #1) | April 26, 2019 | Aluminum Rod (wire) with a diameter of 9.53 mm (with a range from 9.33 mm to 9.73 mm), H12 temper, and tensile strength ranging from 90 to 110 MPa. | 7605110030 | December 16, 2019 |
| BIS-2018-0002-20759 (General Cable – Rod #2) | April 26, 2019 | Aluminum Rod (wire) with a diameter of 9.53 mm (with a range from 9.33mm to 9.73 mm), H14 temper, and tensile strength ranging from 110 to 130 MPa. | 7605110030 | December 16, 2019 |
| BIS-2018-0002-20760 (General Cable – Rod #3) | April 26, 2019 | Aluminum Rod (wire) with a diameter of 9.53 mm (with a range of 9.33mm to 9.73mm), H16 temper, and tensile strength ranging from 130 to 150 MPa. | 7605110030 | December 16, 2019 |
| BIS-2018-0002-20761 (General Cable – Rod #4) | April 26, 2019 | Aluminum Rod (wire) with a diameter of 11.94 mm (with a range from 11.74 mm to 12.14 mm), H14 temper, and tensile strength ranging from 110 to 130 MPa. | 7605110030 | December 16, 2019 |
| BIS-2018-0002-20762 (General Cable – Rod #5) | April 26, 2019 | Aluminum Rod (wire) with a diameter of 9.53 mm (with a range from 9.33 mm to 9.73 mm), T4 temper, and tensile strength ranging from 160 to 230 MPa. | 7605210030 | December 16, 2019 |

| BIS-2018-0002-20763 (General Cable – Rod #6) | April 26, 2019 | Aluminum Rod (wire) with a diameter of 9.53 mm (with a range from 9.33 mm to 9.73 mm), T4 High Mag temper, and tensile strength ranging from 170 to 240 MPa. | 7605210030 | December 16, 2019 |
|---|---|---|---|---|
| BIS-2018-0002-20764 (General Cable – Rod #7) | April 26, 2019 | Aluminum Rod (wire) with a diameter of 9.53 mm (with a range from 9.02 mm to 10.04 mm), H16 temper, and tensile strength ranging from 117.2 to 137.9 MPa. | 7605210030 | December 16, 2019 |
| BIS-2018-0002-20765 (Prysmian – Rod #1) | April 26, 2019 | Aluminum Rod (wire) with a diameter of 9.53 mm (with a range of 9.02 mm to 9.91 mm), H-12 temper, and tensile strength ranging from 83 to 110 MPa. | 7605110030 | December 16, 2019 |
| BIS-2018-0002-20766 (Prysmian – Rod #2) | April 26, 2019 | Aluminum Rod (wire) with a diameter of 9.53 mm (with a range from 9.02 mm to 10.03 mm), H1X temper, and tensile strength ranging from 103 to 138 MPa. | 7605210030 | December 16, 2019 |
| Request # 121434 (General Cable – Rod #2) | August 6, 2020 | Aluminum Rod (wire) with a diameter of 9.53 mm (with a range from 9.33mm to 9.73 mm), H14 temper, and tensile strength ranging from 110 to 130 MPa. | 7605110000 | December 23, 2020 |
| Request # 121447 (General Cable – Rod #7) | August 6, 2020 | Aluminum Rod (wire) with a diameter of 9.53 mm (with a range from 9.02 mm to 10.04 mm), H14 temper, and tensile strength ranging from 120 to 140 MPa. | 7605210000 | December 23, 2020 |

| Request # 121444 (Prysmian – Rod #1) | August 6, 2020 | Aluminum Rod (wire) with a diameter of 9.53 mm (with a range of 9.33 mm to 9.73 mm), H-12 temper, and tensile strength ranging from 83 to 110 MPa. | 7605110000 | December 23, 2020 |
|---|---|---|---|---|
| Request # 261098 (General Cable – Rod #2) | November 10, 2021 | Aluminum Rod (wire) with a diameter of 9.53 mm (with a range from 9.33 mm to 9.73 mm), H-14 temper, and tensile strength ranging from 110 to 130 MPa. | 7605110000 | April 6, 2022 |
| Request # 261115 (General Cable – Rod #7) | November 10, 2021 | Aluminum Rod (wire) with a diameter of 9.53 mm (with a range from 9.02 mm to 10.04 mm), H14 temper, and tensile strength ranging from 120 to 140 MPa. | 7605210000 | July 31, 2022 |
| Request # 261137 (Prysmian – Rod #1) | November 10, 2021 | Aluminum Rod (wire) with a diameter of 9.53 mm (with a range of 9.33mm to 9.73mm), H-12 temper, and tensile strength ranging from 90 to 110 MPa. | 7605110000 | February 12, 2023 |

44.    Three companies have filed objections to the various exclusion requests filed by Prysmian and General Cable.

45.    As a direct competitor to Prysmian and General Cable, Southwire objected to every exclusion request filed by General Cable or Prysmian.

46.    Two companies, including Southwire, filed objections to Prysmian's 2018 exclusion request. Among other things, the objectors claimed that sufficient quantities of domestically produced aluminum rod were available and that the aluminum rod should be sourced

from M7M and/or Southwire. However, Prysmian demonstrated that sufficient quantities were not available, that the objectors had failed to provide substantive details to support their assertions to the contrary, that Southwire's aluminum rod capacity could not meet domestic demand, that M7M was not presently manufacturing aluminum rod and had not committed to manufacturing within a proximate timeframe, and that Southwire itself had filed aluminum tariff exclusion requests. These objections were without merit and Prysmian was therefore entitled to its requested exclusion under 15 C.F.R. pt. 705, supp. 1 for the following reasons:

 a. The aluminum rod procured by Prysmian was not and is not produced in the United States in a sufficient and reasonably available amount.

 b. The objectors failed to meet the requirement that they provide specific written evidence of their ability to produce the substitute product within the requisite timeframe.

 c. The reasons set forth in Prysmian's exclusion request and objection rebuttal.

47. Two companies, including Southwire, filed objections to General Cable's 2018 exclusion request. Among other things, the objectors claimed that sufficient quantities of domestically produced aluminum rod were available and that the aluminum rod should be sourced from M7M and/or Southwire. However, General Cable showed that sufficient quantities were not available, that the objectors had failed to provide substantive details to support their assertions to the contrary, that Southwire's aluminum rod capacity could not meet U.S. demand, that M7M was not presently manufacturing aluminum rod and had not committed to manufacturing within a proximate timeframe, and that Southwire itself had filed aluminum tariff exclusion requests. These objections were without merit and General Cable was therefore entitled to its requested exclusion under 15 C.F.R. pt. 705, supp. 1 for the following reasons:

a.     The aluminum rod procured by General Cable was not and is not produced in the United States in a sufficient and reasonably available amount.

b.     The objectors failed to meet the requirement that they provide specific written evidence of their ability to produce the substitute product within the requisite timeframe.

c.     The reasons set forth in General Cable's exclusion request and objection rebuttal.

48.     Two companies, including Southwire, filed objections to General Cable's April 26, 2019, exclusion requests. Among other things, the objectors claimed that Southwire had sufficient aluminum rod capacity to meet General Cable's demand, that General Cable had rejected several of Southwire's offers, and that there was significant idled domestic production capacity based upon aluminum rod mills owned by M7M. However, General Cable established that Southwire was the sole domestic producer of aluminum rod and that no aluminum manufacturer had operationalized long-idle aluminum smelters to satisfy domestic demand. General Cable also showed that, absent the exclusion, downstream industries like public utilities and renewables, as well as domestic power generation and transmission infrastructure, would be negatively impacted. *See also* Adjusting Imports of Aluminum Into the United States, Pres. Proc. No. 9776, 86 FR 6825 (January 19, 2021). In response to the objections, General Cable showed that the aluminum rod specifications provided by Southwire would have critical deficiencies, that Southwire provided no evidence General Cable had rejected any purported offers and that Southwire initially refused to sell to General Cable, then defaulted on a purchase order, and finally denied having available volume, and that M7M did not have an operating rod mill capable of producing the aluminum rod and was not taking any steps to actualize production potential. These objections were without merit

and General Cable was therefore entitled to its requested exclusions under 15 C.F.R. pt. 705, supp. 1 for the following reasons:

    a.     The aluminum rod procured by General Cable was not and is not produced in the United States in a sufficient and reasonably available amount.

    b.     The objectors failed to meet the requirement that they provide specific written evidence of their ability to produce the substitute product within the requisite timeframe.

    c.     Specific national security considerations.

    d.     The reasons set forth in General Cable's exclusion request and objection rebuttal.

49.    Two companies, including Southwire, filed objections to Prysmian's April 26, 2019, exclusion requests. Among other things, the objectors claimed that Southwire had sufficient aluminum rod capacity to meet Prysmian's demand, that Prysmian had rejected several of Southwire's offers, and that there was significant idled domestic production capacity based upon aluminum rod mills owned by M7M. However, Prysmian showed that Southwire was the sole domestic producer of aluminum rod and that no aluminum manufacturer had operationalized long-idle aluminum smelters to satisfy domestic demand. Prysmian also showed that, absent the exclusion, downstream industries like public utilities and renewables, as well as domestic power generation and transmission infrastructure, would be negatively impacted. *See supra* Pres. Proc. No. 9776, 86 FR 6825. In response to the objections, Prysmian showed that the aluminum rod specifications provided by Southwire would have critical deficiencies, that Southwire provided no evidence Prysmian had rejected any purported offers and that Southwire initially refused to sell to Prysmian, partially filled one purchase order, and finally denied having available volume, and that

M7M did not have an operating rod mill capable of producing the aluminum rod and it was not taking any steps to actualize production potential. These objections were without merit and Prysmian was therefore entitled to its requested exclusions under 15 C.F.R. pt. 705, supp. 1 for the following reasons:

      a.    The aluminum rod procured by Prysmian was not and is not produced in the United States in a sufficient and reasonably available amount.

      b.    The objectors failed to meet the requirement that they provide specific written evidence of their ability to produce the substitute product within the requisite timeframe.

      c.    Specific national security considerations.

      d.    The reasons set forth in Prysmian's exclusion request and objection rebuttal.

50.    Southwire filed an objection to General Cable's August 6, 2020, exclusion requests. Among other things, Southwire claimed that it had repeatedly offered the aluminum rod for sale to General Cable. However, General Cable illustrated that Southwire itself had been forced to file aluminum tariff exclusion requests, that Southwire could not satisfy all domestic 1350 aluminum rod needs in the aggregate and improperly packaged a small amount of 1350 rod shipped to General Cable, that Southwire was unwilling to supply General Cable with 8000 aluminum rod, and that no new aluminum rod producers had come online post-enactment of the Section 232 tariffs, with M7M's aluminum rod mills remaining idled and no indication it could supply during the pertinent time period. General Cable also reiterated its showing with respect to downstream industries and domestic infrastructure. In response to the objections, General Cable showed that Southwire could not timely supply General Cable with 1350 aluminum rod due to its outstanding contractual obligations, that Southwire representatives advised General Cable to not even request a 1350 quote

because there was no volume available for 2020, and that Southwire was not making 8030 aluminum rod, and General Cable shared its belief that Southwire continued to procure aluminum rod from other countries. These objections were without merit and General Cable was therefore entitled to its requested exclusions under 15 C.F.R. pt. 705, supp. 1 for the following reasons:

a.    The aluminum rod procured by General Cable was not and is not produced in the United States in a sufficient and reasonably available amount.

b.    The objector failed to meet the requirement that it provide specific written evidence of its ability to produce the substitute product within the requisite timeframe.

c.    Specific national security considerations.

d.    The reasons set forth in General Cable's exclusion request and objection rebuttal.

51.    Southwire filed an objection to Prysmian's August 6, 2020, exclusion request. Among other things, Southwire claimed that it had repeatedly offered the aluminum rod for sale to Prysmian. However, Prysmian demonstrated that Southwire could not satisfy all domestic 1350 aluminum rod needs in the aggregate and improperly packaged a small amount of 1350 rod shipped to Prysmian, and that no new aluminum rod producers had come online post-enactment of the Section 232 tariffs, with M7M's aluminum rod mills remaining idled and no indication it could supply during the pertinent time period. Prysmian also reiterated its showing with respect to downstream industries and domestic infrastructure. In response to the objections, Prysmian proved that Southwire could not timely supply Prysmian with 1350 aluminum rod due to its outstanding contractual obligations and that Southwire representatives advised Prysmian to not even request a 1350 quote because there was no volume available for 2020, and Prysmian shared its belief that Southwire continued to procure aluminum road from other countries. These objections were

without merit and Prysmian was therefore entitled to its requested exclusion under 15 C.F.R. pt. 705, supp. 1 for the following reasons:

    a.    The aluminum rod procured by Prysmian was not and is not produced in the United States in a sufficient and reasonably available amount.

    b.    The objector failed to meet the requirement that it provide specific written evidence of its ability to produce the substitute product within the requisite timeframe.

    c.    Specific national security considerations.

    d.    The reasons set forth in Prysmian's exclusion request and objection rebuttal.

52.    Two companies, including Southwire, filed objections to General Cable's November 10, 2021, exclusion requests. Among other things, the objectors claimed that General Cable had rejected Southwire's offers, that liquid aluminum was a substitute product, and that M7M produced an identical rod. However, General Cable showed that Southwire did not offer sufficient volume to General Cable facilities, that Southwire's price quote constituted price gouging, and that Alubar acquired M7M's aluminum rod mill and had not yet begun domestic operations. In response to the objections, General Cable showed that liquid aluminum is not a relevant substitute product and that General Cable does not have the technical capabilities to transform liquid aluminum into aluminum rod. These objections were without merit and General Cable was therefore entitled to its requested exclusions under 15 C.F.R. pt. 705, supp. 1 for the following reasons:

    a.    The aluminum rod procured by General Cable was not and is not produced in the United States in a sufficient and reasonably available amount.

    b.    The aluminum rod procured by General Cable was not and is not produced in the United States in a satisfactory quality.

c.    The objectors failed to meet the requirement that they provide specific written evidence of their ability to produce the substitute product within the requisite timeframe.

d.    Specific national security considerations.

e.    The reasons set forth in General Cable's exclusion request and objection rebuttal.

53.    Two companies, including Southwire, filed objections to Prysmian's November 10, 2021, exclusion request. Among other things, the objectors claimed that Prysmian had rejected Southwire's offers, that liquid aluminum was a substitute product, and that M7M produced an identical rod. However, Prysmian showed that Southwire did not offer volume to Prysmian facilities and that Alubar acquired M7M's aluminum rod mill and had not yet begun U.S. operations. In response to the objections, Prysmian showed that liquid aluminum is not a relevant substitute product and that Prysmian does not have the technical capabilities to transform liquid aluminum into aluminum rod.

### C.    The Department's Denial of Exclusion Requests

54.    The Department denied almost every exclusion request filed by Prysmian and General Cable.

55.    Most, if not all the denials, were later than 106 days after submission. *See* 15 C.F.R. pt. 705, supp. 1(h)(3)(i) ("The review period normally will not exceed 106 days for requests that receive objections, including adjudication of objections submitted on exclusion requests and any rebuttals to objections, and surrebuttals.").

56.    On April 19, 2019, the Department denied General Cable's 2018 exclusion request, using the following generic, conclusory language as the only basis for its decision:

> BIS has considered the evidence provided, including in the exclusion request as well as any applicable objection filings and its report to the President of January 17, 2018, has solicited and taken into account analysis provided by the International Trade Commission (ITA), and assessed other interagency comments as applicable.
>
> In examining whether the relevant aluminum article is produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, ITA recommends finding, based on all the evidence presented, that the product referenced in the . . . exclusion is produced in the United States in a sufficient and reasonably available amount and of a satisfactory quality, and recommends denying the request for exclusion.
>
> BIS accepts ITA's recommended findings as to the domestic availability of the product, and finds that no overriding national security concerns require that this exclusion request be granted notwithstanding the domestic availability.

*See* BIS Decision Document Regarding BIS-2018-0002-0502.

57.    The ITA's findings were not attached to the April 19, 2019, denial.

58.    On May 4, 2019, the Department denied Prysmian's 2018 exclusion request, using

the following generic, conclusory language as the only basis for its decision:

> BIS has considered the evidence provided, including in the exclusion request as well as any applicable objection filings and its report to the President of January 17, 2018, has solicited and taken into account analysis provided by the International Trade Commission (ITA), and assessed other interagency comments as applicable.
>
> In examining whether the relevant aluminum article is produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, ITA recommends finding, based on all the evidence presented, that the product referenced in the . . . exclusion is produced in the United States in a sufficient and reasonably available amount and of a satisfactory quality, and recommends denying the request for exclusion.
>
> BIS accepts ITA's recommended findings as to the domestic availability of the product, and finds that no overriding national security concerns require that this exclusion request be granted notwithstanding the domestic availability.

*See* BIS Decision Document Regarding BIS-2018-0002-0257

59.    The ITA's findings were not attached to the May 4, 2019, denial.

60.     On December 16, 2019, the Department denied General Cable's April 26, 2019, exclusion requests, using the following generic, conclusory language as the only basis for its decisions:

> BIS has considered the evidence provided, including in the exclusion request as well as any applicable objection filings and its report to the President of January 17, 2018, has solicited and taken into account analysis provided by the International Trade Commission (ITA), and assessed other interagency comments as applicable.
>
> In examining whether the relevant aluminum article is produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, ITA recommends finding, based on all the evidence presented, that the product referenced in the . . . exclusion is produced in the United States in a sufficient and reasonably available amount and of a satisfactory quality, and recommends denying the request for exclusion.
>
> BIS accepts ITA's recommended findings as to the domestic availability of the product, and finds that no overriding national security concerns require that this exclusion request be granted notwithstanding the domestic availability.

*See* BIS Decision Documents Regarding BIS-2018-0002-20758, BIS-2018-0002-20759, BIS-2018-0002-20760, BIS-2018-0002-20761, BIS-2018-0002-20762, BIS-2018-0002-20763, and BIS-2018-0002-20764.

61.     The ITA's findings were not attached to the December 16, 2019, denials.

62.     On December 16, 2019, the Department denied Prysmian's April 26, 2019, exclusion requests, using the following generic, conclusory language as the only basis for its decisions:

> BIS has considered the evidence provided, including in the exclusion request as well as any applicable objection filings and its report to the President of January 17, 2018, has solicited and taken into account analysis provided by the International Trade Commission (ITA), and assessed other interagency comments as applicable.
>
> In examining whether the relevant aluminum article is produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, ITA recommends finding, based on all the evidence presented, that the product referenced in the . . . exclusion is produced in the United States in a sufficient and reasonably available amount and of a satisfactory quality, and recommends denying the request for exclusion.

> BIS accepts ITA's recommended findings as to the domestic availability of the product, and finds that no overriding national security concerns require that this exclusion request be granted notwithstanding the domestic availability.

*See* BIS Decision Documents Regarding BIS-2018-0002-20765 and BIS-2018-0002-20766.

63.    The ITA's findings were not attached to the December 16, 2019, denials.

64.    On December 23, 2020, the Department denied General Cable's August 6, 2020, exclusion requests, using the following generic, conclusory language as the primary basis for its decisions:

> BIS has considered the evidence provided, including in the exclusion request as well as any applicable objection filings and its report to the President of January 17, 2018, has solicited and taken into account analysis provided by the International Trade Commission (ITA), and assessed other interagency comments as applicable.
>
> In examining whether the relevant aluminum article is produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, ITA has provided the attached findings and recommends denying the request for an exclusion.
>
> BIS accepts ITA's recommended findings and finds that no overriding national security concerns require that this exclusion request be granted notwithstanding recommendation of denial.

*See* BIS Decision Documents Regarding Request # 121434 and Request # 121447.

65.    The ITA's findings attached to the December 23, 2020, denials concluded that nothing "in the request, rebuttal, or surrebuttal, including attachments, provide evidence to contradict the objector's claims" and thus concluded that "Southwire can manufacture an identical product," that "Southwire can produce 100 percent of the requested volume," and that "Southwire meets the timeliness criterion." *See* ITA Recommendation Documents Regarding Request # 121434 and Request # 121447, Quality, Quantity, and Timeliness. In rendering its conclusions, ITA noted that, "[w]hen determining if a company meets the quantity criteria, . . . ITA does not examine the production capacity of a company or industry as a whole." *Id.* at Explanation.

66.    The ITA's findings attached to the December 23, 2020, denials implicitly misstated the respective burdens of requesters and objectors, *see* 15 C.F.R. pt. 705, supp. 1(d)(4), as well as the proper examination with respect to assessing the quantity criteria.

67.    On December 23, 2020, the Department denied Prysmian's August 6, 2020, exclusion request, using the following generic, conclusory language as the primary basis for its decision:

> BIS has considered the evidence provided, including in the exclusion request as well as any applicable objection filings and its report to the President of January 17, 2018, has solicited and taken into account analysis provided by the International Trade Commission (ITA), and assessed other interagency comments as applicable.

> In examining whether the relevant aluminum article is produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, ITA has provided the attached findings and recommends denying the request for an exclusion.

> BIS accepts ITA's recommended findings and finds that no overriding national security concerns require that this exclusion request be granted notwithstanding recommendation of denial.

*See* BIS Decision Document Regarding Request # 121444.

68.    The ITA's findings attached to the December 23, 2020, denial concluded that nothing "in the request, rebuttal, or surrebuttal, including attachments, provide evidence to contradict the objector's claims" and thus concluded that "Southwire manufactures an identical product," that "Southwire . . . can manufacture 100 percent of the quantity requested," and that "Southwire meets the timeliness criterion." *See* ITA Recommendation Document Regarding Request # 121444, Quality, Quantity, and Timeliness. In rendering its conclusions, ITA noted that, "[w]hen determining if a company meets the quantity criteria, . . . ITA does not examine the production capacity of a company or industry as a whole." *Id.* at Explanation.

69.    The ITA's findings attached to the December 23, 2020, denial implicitly misstated the respective burdens of requesters and objectors, *see* 15 C.F.R. pt. 705, supp. 1(d)(4), as well as the proper examination with respect to assessing the quantity criteria.

70.    On April 6, 2022, the Department denied General Cable's November 10, 2021, exclusion request concerning 1350 aluminum rod, using the following generic, conclusory language as the primary basis for its decision:

> BIS has considered the evidence provided, including in the exclusion request as well as any applicable objection filings and its report to the President of January 17, 2018, has solicited and taken into account analysis provided by the International Trade Commission (ITA), and assessed other interagency comments as applicable.
>
> In examining whether the relevant aluminum article is produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, ITA has provided the attached findings and recommends denying the request for an exclusion.
>
> BIS accepts ITA's recommended findings and finds that no overriding national security concerns require that this exclusion request be granted notwithstanding recommendation of denial.

*See* BIS Decision Document Regarding Request # 261098.

71.    The ITA's findings attached to the April 6, 2022, denial concluded that nothing "in the request, rebuttal, or surrebuttal, including attachments, provide evidence to contradict the objector's claims" and thus concluded that "Southwire can manufacture an identical product," that "Southwire can produce 100 percent of the requested volume," and that "Southwire meets the timeliness criterion." *See* ITA Recommendation Document Regarding Request # 261098, Quality, Quantity, and Timeliness. In rendering its conclusions, ITA noted that,"[w]hen determining if a company meets the quantity criteria, . . . ITA does not examine the production capacity of a company or industry as a whole." *Id.* at Explanation.

72.    The ITA's findings attached to the April 6, 2022, denial implicitly misstated the respective burdens of requesters and objectors, *see* 15 C.F.R. pt. 705, supp. 1(d)(4), as well as the proper examination with respect to assessing the quantity criteria.

73.     On July 31, 2022, the Department denied General Cable's November 10, 2021, exclusion request concerning 8030 aluminum rod, using the following generic, conclusory language as the only basis for its decision:

> BIS has considered the evidence provided, including in the exclusion request and its report to the President of January 17, 2018, has and assessed other interagency comments as applicable.
>
> BIS finds that overriding national security concerns require that this exclusion request be denied notwithstanding any analysis of domestic availability or presence of objectors. The United States has a vital national interest in imposing economic costs on Russia and/or Belarus in response to the invasion of Ukraine. The aluminum industry plays a key defense and wealth generation role in Russia and Belarus, and thus it is consistent with overarching national security policy to cease issuing exclusions from Section 232 Duties for imports for aluminum from Russia and Belarus.

*See* BIS Decision Document Regarding Request # 261115.

74.     The July 31, 2022, denial contravened the ITA's attached findings recommending approval because liquid aluminum was not a suitable substitute product and because Southwire was likewise not offering a suitable substitute product, much less an identical product. *See* ITA Recommendation Document Regarding Request # 261115, Quality. Moreover, the denial exceeded the Department's delegated authority to ***approve*** exclusions based on specific national security considerations—instead ***refusing*** to exclude based on such considerations—and further exceeded the Department's delegated authority by considering the national interest in imposing economic costs on Russia and/or Belarus, rather than the findings set forth in the Secretary's recommendation. Additionally, the denial ran counter to the evidence because the Department's explanation—that the denial is warranted to impose economic costs on Russia/Belarus and to prevent the aluminum industry from serving its defense and wealth generation roles in those countries—ignored that there is a comprehensive scheme of sanctions against Russia/Belarus, that the supplier from whom aluminum rod was procured from is not one of the companies or entities

sanctioned, and that the aluminum rod had already been procured by the time of the denial and thus no economic costs were imposed on Russia or Belarus. The denial was otherwise improper because the exclusion request was filed in November 2021 concerning procurements that were made *preceding the invasion of Ukraine*.

75.    On February 12, 2023, the Department partially granted Prysmian's November 10, 2021, exclusion request for the following reasons:

> BIS has considered the evidence provided, including in the exclusion request as well as any applicable objection filings and its report to the President of January 17, 2018, has solicited and taken into account analysis provided by the International Trade Commission (ITA), and assessed other interagency comments as applicable.

> In examining whether the relevant aluminum article is produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, ITA recommends finding, based on all the evidence presented, that the product referenced in the above-captioned exclusion request is not produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, and recommends granting the request for an exclusion.

> BIS accepts ITA's recommended findings as to the domestic availability of the product, and finds that no overriding national security concerns requires that this exclusion request be denied notwithstanding the lack of sufficient domestic availability, However, BIS does find that duty-free imports from Russia and Belarus for which exclusions were requested are contrary to the national security policy of the United States in response to the invasion of Ukraine, and therefore BIS cannot grant this exclusion for the source countries of Russia or Belarus.

*See* BIS Decision Document Regarding Request # 261137.

76.    The February 12, 2023, refusal to grant the exclusion for the source countries of Russia or Belarus exceeded the Department's delegated authority to *approve* exclusions based on specific national security considerations—instead *refusing* to exclude based on such considerations—and further exceeded the Department's delegated authority by considering the national interest in imposing economic costs on Russia and/or Belarus rather than the findings set forth in the Secretary's recommendation. Additionally, the denial ran counter to the evidence because the Department's explanation—that the denial is warranted to impose economic costs on

Russia/Belarus and to prevent the aluminum industry from serving its defense and wealth generation roles in those countries—ignored that there is a comprehensive scheme of sanctions against Russia/Belarus, that the supplier from whom aluminum rod was procured from is not one of the companies or entities sanctioned, and that the aluminum rod had already been procured by the time of the denial and thus no economic costs were imposed on Russia or Belarus. The denial was otherwise improper because the exclusion request was filed in November 2021 concerning procurements that were made *preceding the invasion*.

77.    In sum, the Department's denials are wrongful for the following reasons:

a.    Most of the denials were facially rendered without any consideration of the evidence or reasoned basis for its decisions, without demanding proof from the objectors, without developing and adhering to a process designed to ascertain the truth regarding these unsupported objections, and without any follow-up inquiry or investigation, as evidenced by the usage of generic, conclusory language and the omission of attached ITA findings.

b.    All the denials, including denials with attached ITA findings, were otherwise rendered without any consideration of the evidence or reasoned basis for its decision, without demanding proof from the objectors, without developing and adhering to a process designed to ascertain the truth regarding these unsupported objections, and without any follow-up inquiry or investigation, as established by the February 12, 2023, grant as well as  the ITA's findings attached to the July 31, 2022, denial, which prove that the prior denials—concluding that the aluminum rods were produced in the United States in a sufficient and reasonably available amount and of a satisfactory quality—were incorrect.

c.    The reasons set forth in the exclusion requests and objection rebuttals.

d.    The reasons set forth herein.

78.    The denials discussed above are consistent with a pattern and practice of the Department to improperly defer to objectors. According to a study conducted by the Mercatus Center at George Mason University, objections tended to instigate denial as of March 18, 2019, with the Department only approving 2.7% of aluminum tariff exclusions requests with an objection. *See* Christine McDaniel & Danielle Parks, Tariff Exclusion Requests: A One-Year Update, Mercatus Center (Apr. 11, 2019), available at: www.mercatus.org/bridge/commentary/tariff-exclusion-requests-one-year-update. According to a follow-up study by the Mercatus Center, objections still tended to disproportionately influence the Department as of December 6, 2019. *See* Christine McDaniel & Danielle Parks, Section 232 Steel and Aluminum Tariff Exclusion Requests Continue Apace (Jan. 21, 2020), available at: www.mercatus.org/students/economic-insights/expert-commentary/section-232-steel-and-aluminum-tariff-exclusion.

## COUNT I
### (Administrative Procedure Act (5 U.S.C. §§ 701–706))
### Prysmian's 2018 Exclusion Request

79.    Paragraphs 1-78 are incorporated herein as if fully stated.

80.    In 2018, Prysmian submitted Exclusion Request No. BIS-2018-0002-0257 seeking exclusion from the Section 232 aluminum tariff for certain aluminum rod procured internationally.

81.    Applying the standards set forth in the Department's rule (15 C.F.R. pt. 705, supp. 1) to the evidence in the record, the only reasonable conclusion that the Department could properly have reached with regard to this exclusion request was that Prysmian could not obtain the aluminum rod in the domestic market in a sufficient quantity or quality on a timely basis to replace the aluminum rod it procured internationally.

82.    Accordingly, Prysmian was and remains entitled to the requested tariff exclusion.

83.    Notwithstanding Prysmian's entitlement, the Department denied Prysmian's exclusion request on May 4, 2019.

84.    The Department's decision denying Prysmian's request for exclusion from the Section 232 aluminum tariff, without any evidentiary basis and without any expressed, reasoned basis for doing so, was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. The Department's decision was rendered "without observance of procedure required by law," and thus must be held "unlawful and set aside" by this Court. *See* 5 U.S.C. §§ 702, 706.

## COUNT II
### (Administrative Procedure Act (5 U.S.C. §§ 701–706))
### General Cable's 2018 Exclusion Request

85.    Paragraphs 1-78 are incorporated herein as if fully stated.

86.    In 2018, General Cable submitted Exclusion Request No. BIS-2018-0002-0502 seeking exclusion from the Section 232 aluminum tariff for certain aluminum rod procured internationally.

87.    Applying the standards set forth in the Department's rule (15 C.F.R. pt. 705, supp. 1) to the evidence in the record, the only reasonable conclusion that the Department could properly have reached with regard to this exclusion request was that General Cable could not obtain the aluminum rod in the domestic market in a sufficient quantity or quality on a timely basis to replace the aluminum rod it procured internationally.

88.    Accordingly, General Cable was entitled to the requested tariff exclusion, and Prysmian remains so entitled as its successor-in-interest.

89.    Notwithstanding General Cable's entitlement, the Department denied General Cable's exclusion request on April 19, 2019.

90.     The Department's decision denying General Cable's request for exclusion from the Section 232 aluminum tariff, without any evidentiary basis and without any expressed, reasoned basis for doing so, were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. The Department's decision was rendered "without observance of procedure required by law," and thus must be held "unlawful and set aside" by this Court. *See* 5 U.S.C. §§ 702, 706.

**COUNT III**
**(Administrative Procedure Act (5 U.S.C. §§ 701–706))**
**General Cable's April 26, 2019, Exclusion Requests**

91.     Paragraphs 1-78 are incorporated herein as if fully stated.

92.     On April 26, 2019, General Cable submitted Exclusion Request Nos. BIS-2018-0002-20758, BIS-2018-0002-20759, BIS-2018-0002-20760, BIS-2018-0002-20761, BIS-2018-0002-20762, BIS-2018-0002-20763, and BIS-2018-0002-20764 seeking exclusion from the Section 232 aluminum tariff for certain aluminum rod procured internationally.

93.     Applying the standards set forth in the Department's rule (15 C.F.R. pt. 705, supp. 1) to the evidence in the record, the only reasonable conclusion that the Department could properly have reached with regard to these exclusion requests was that General Cable could not obtain the aluminum rod in the domestic market in a sufficient quantity or quality on a timely basis to replace the aluminum rod it procured internationally.

94.     Accordingly, General Cable was entitled to the requested tariff exclusions, and Prysmian remains so entitled as its successor-in-interest.

95.     Notwithstanding General Cable's entitlement, the Department denied General Cable's exclusion requests on December 16, 2019.

96.     The Department's decisions denying General Cable's requests for exclusion from the Section 232 aluminum tariff, without any evidentiary basis and without any expressed,

reasoned basis for doing so, were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. The Department's decisions were rendered "without observance of procedure required by law," and thus must be held "unlawful and set aside" by this Court. *See* 5 U.S.C. §§ 702, 706.

## <u>COUNT IV</u>
### (Administrative Procedure Act (5 U.S.C. §§ 701–706))
### Prysmian's April 26, 2019, Exclusion Requests

97.    Paragraphs 1-78 are incorporated herein as if fully stated.

98.    On April 26, 2019, Prysmian submitted Exclusion Request Nos. BIS-2018-0002-20765 and BIS-2018-0002-20766 seeking exclusion from the Section 232 aluminum tariff for certain aluminum rod procured internationally.

99.    Applying the standards set forth in the Department's rule (15 C.F.R. pt. 705, supp. 1) to the evidence in the record, the only reasonable conclusion that the Department could properly have reached with regard to these exclusion requests was that Prysmian could not obtain the aluminum rod in the domestic market in a sufficient quantity or quality on a timely basis to replace the aluminum rod it procured internationally.

100.    Accordingly, Prysmian was and remains entitled to the requested tariff exclusions.

101.    Notwithstanding Prysmian's entitlement, the Department denied Prysmian's exclusion requests on December 16, 2019.

102.    The Department's decisions denying Prysmian's requests for exclusion from the Section 232 aluminum tariff, without any evidentiary basis and without any expressed, reasoned basis for doing so, were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. The Department's decisions were rendered "without observance of procedure required by law," and thus must be held "unlawful and set aside" by this Court. *See* 5 U.S.C. §§ 702, 706.

<u>**COUNT V**</u>
**(Administrative Procedure Act (5 U.S.C. §§ 701–706))**
**General Cable's August 6, 2020, Exclusion Requests**

103.    Paragraphs 1-78 are incorporated herein as if fully stated.

104.    On August 6, 2020, General Cable submitted Exclusion Request Nos. 121434 and 121447 seeking exclusion from the Section 232 aluminum tariff for certain aluminum rod procured internationally.

105.    Applying the standards set forth in the Department's rule (15 C.F.R. pt. 705, supp. 1) to the evidence in the record, the only reasonable conclusion that the Department could properly have reached with regard to these exclusion requests was that General Cable could not obtain the aluminum rod in the domestic market in a sufficient quantity or quality on a timely basis to replace the aluminum rod it procured internationally.

106.    Accordingly, General Cable was entitled to the requested tariff exclusions, and Prysmian remains so entitled as its successor-in-interest.

107.    Notwithstanding General Cable's entitlement, the Department denied General Cable's exclusion requests on December 23, 2020.

108.    The Department's decisions denying General Cable's requests for exclusion from the Section 232 aluminum tariff, without any evidentiary basis and without any expressed, reasoned basis for doing so, were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. The Department's decisions were rendered "without observance of procedure required by law," and thus must be held "unlawful and set aside" by this Court. *See* 5 U.S.C. §§ 702, 706.

## COUNT VI
### (Administrative Procedure Act (5 U.S.C. §§ 701–706))
### Prysmian's August 6, 2020, Exclusion Requests

109.    Paragraphs 1-78 are incorporated herein as if fully stated.

110.    On August 6, 2020, Prysmian submitted Exclusion Request No. 121444 seeking exclusion from the Section 232 aluminum tariff for certain aluminum rod procured internationally.

111.    Applying the standards set forth in the Department's rule (15 C.F.R. pt. 705, supp. 1) to the evidence in the record, the only reasonable conclusion that the Department could properly have reached with regard to this exclusion request was that Prysmian could not obtain the aluminum rod in the domestic market in a sufficient quantity or quality on a timely basis to replace the aluminum rod it procured internationally.

112.    Accordingly, Prysmian was and remains entitled to the requested tariff exclusion.

113.    Notwithstanding Prysmian's entitlement, the Department denied Prysmian's exclusion request on December 23, 2020.

114.    The Department's decision denying Prysmian's request for exclusion from the Section 232 aluminum tariff, without any evidentiary basis and without any expressed, reasoned basis for doing so, were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. The Department's decision was rendered "without observance of procedure required by law," and thus must be held "unlawful and set aside" by this Court. *See* 5 U.S.C. §§ 702, 706.

## COUNT VII
**(Administrative Procedure Act (5 U.S.C. §§ 701–706))**
**General Cable's November 10, 2021, Exclusion Request**

115.    Paragraphs 1-78 are incorporated herein as if fully stated.

116.    On November 10, 2021, General Cable submitted Exclusion Request Nos. 261098 and 261115 seeking exclusion from the Section 232 aluminum tariff for certain aluminum rod procured internationally.

117.    Applying the standards set forth in the Department's rule (15 C.F.R. pt. 705, supp. 1) to the evidence in the record, the only reasonable conclusion that the Department could properly have reached with regard to these exclusion requests was that General Cable could not obtain the aluminum rod in the domestic market in a sufficient quantity or quality on a timely basis to replace the aluminum rod it procured internationally.

118.    Accordingly, General Cable was entitled to the requested tariff exclusions, and Prysmian remains so entitled as its successor-in-interest.

119.    Notwithstanding General Cable's entitlement, the Department denied General Cable's exclusion requests on April 6, 2022, and on July 31, 2022.

120.    The Department's decision denying General Cable's requests for exclusion from the Section 232 aluminum tariff, without any evidentiary basis and without any expressed, reasoned basis for doing so, were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. The Department's decisions were rendered "without observance of procedure required by law," and thus must be held "unlawful and set aside" by this Court. *See* 5 U.S.C. §§ 702, 706.

## COUNT VIII
### (Administrative Procedure Act (5 U.S.C. §§ 701–706))
### Prysmian's November 10, 2021, Exclusion Request

121.    Paragraphs 1-78 are incorporated herein as if fully stated.

122.    On November 10, 2021, Prysmian submitted Exclusion Request No. 261137 seeking exclusion from the Section 232 aluminum tariff for certain aluminum rod procured internationally.

123.    Applying the standards set forth in the Department's rule (15 C.F.R. pt. 705, supp. 1) to the evidence in the record, the only reasonable conclusion that the Department could properly have reached with regard to these exclusion requests was that Prysmian could not obtain the aluminum rod in the U.S. market in a sufficient quantity or quality on a timely basis to replace the aluminum rod it procured internationally.

124.    Accordingly, Prysmian was and remains entitled to the requested tariff exclusions.

125.    Notwithstanding Prysmian's entitlement, the Department partially denied Prysmian's exclusion request on February 12, 2023.

126.    The Department's decision partially denying Prysmian's request for exclusion from the Section 232 aluminum tariff, without any evidentiary basis and without any expressed, reasoned basis for doing so, were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. The Department's decision was rendered "without observance of procedure required by law," and thus must be held "unlawful and set aside" by this Court. *See* 5 U.S.C. §§ 702, 706.

## **REQUEST FOR RELIEF**

WHEREFORE, Prysmian respectfully requests that this Court enter judgment as follows:

(i)    Declaring that the Department's denials of the exclusion requests filed by Prysmian and General Cable were arbitrary and capricious or otherwise unlawful in violation of the Administrative Procedure Act (5 U.S.C. §§ 701 et seq.);

(ii)    Declaring that Prysmian is entitled to the requested exclusions from the Section 232 steel tariffs, in accordance with Proclamation 9704 and 15 C.F.R. pt. 705, supp. 1, and ordering the Department to instruct Customs and Border Patrol to refund the Section 232 tariffs previously paid by Prysmian and General Cable;

(iii)    Alternatively, remanding the matter to the Department for proper treatment and consideration, in accordance with the requirements of the Administrative Procedure Act;

(iv)    Awarding Prysmian such other relief as the Court deems just and proper.


Dated:  June 7, 2024
Lexington, Kentucky

*/s/Brad S. Keeton*
Brad S. Keeton
FROST BROWN TODD LLP
250 W. Main Street, Suite 2800
Lexington, KY 40507
(859) 231-0000
bkeeton@fbtlaw.com
*Counsel for Plaintiff Prysmian Cables and Systems, USA, LLC*

2799560.0783731  4864-4040-9513