IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

_____
                                        )
PRYSMIAN CABLES AND SYSTEMS             )
USA, LLC,                               )
                                        )
            Plaintiff,                  )
                                        )    Case No. 24-00101
        v.                              )
                                        )
UNITED STATES, *et al.*,                )
                                        )
            Defendants,                 )
_____ )

**DEFENDANTS' RESPONSE TO PLAINTIFF'S**
**MOTION FOR JUDGMENT ON THE AGENCY RECORD**

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

TARA K. HOGAN
Assistant Director

KYLE S. BECKRICH
Trial Attorney
Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel.: (202) 616-9322
Email:  Kyle.Beckrich@usdoj.gov

July 25, 2025                    *Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

STATEMENT PURSUANT TO RULE 56.1(c)(1)................................................................... 1

I.    The Administrative Determinations Under Review ............................................... 1

II.   Statement Of The Issues ....................................................................................... 2

STATEMENT OF FACTS ................................................................................................... 3

I.    The Section 232 Investigation And The President's Proclamations ....................... 3

II.   Commerce's Administrative Procedures For Requesting Product Exclusions................. 5

III.  Prysmian's Exclusion Requests.............................................................................. 7

      A.    Prysmian's November 2021 Exclusion Requests..................................... 7

      B.    Prysmian's January And September 2024 Exclusion Requests ............... 9

IV.   Procedural History ............................................................................................... 10

SUMMARY OF ARGUMENT ........................................................................................... 11

ARGUMENT ................................................................................................................... 12

I.    Standard Of Review............................................................................................. 12

II.   Prysmian's Claims Under 5 U.S.C. § 706(1) Fail As A Matter Of Law Because
      Commerce Has Acted On Every Request Made By Prysmian ............................... 14

III.  Commerce Reasonably Denied Prysmian's November 2021 Requests On National
      Security Grounds ................................................................................................. 16

IV.   Commerce Reasonably Rejected Prysmian's Request To Add An Authorized Importer Of
      Record After The Exclusion Window For Request No. 261137 Closed ........................... 20

V.    Commerce Lacked Authority To Grant Any Exclusion Requests Following *Proclamation
      10895* And *Proclamation 10896* And Thus Properly Denied Prysmian's Pending
      Requests ............................................................................................................. 22

CONCLUSION................................................................................................................. 24

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Bowman Transp. Inc. v. Arkansas-Best Freight System*,
    419 U.S. 281 (1974) ............................................................................ 14

*Canadian Lumber Trade Alliance v. United States*,
    517 F.3d 1319 (Fed. Cir. 2008) ......................................................... 13

*F.C.C. v. Fox Television Stations, Inc.*,
    556 U.S. 502 (2009) ............................................................................ 14

*Ford Motor Co. v. United States*,
    992 F. Supp. 2d 1346 (Ct. Int'l Trade 2014) .................................... 14

*Former Emps. of Alcatel Telecomm. Cable v. Herman*,
    24 CIT 655 (2000) .............................................................................. 13

*Gilda Indus., Inc. v. United States*,
    446 F.3d 1271 (Fed. Cir. 2006) ......................................................... 19

*Intergraph Corp. v. Intel Corp.*,
    253 F.3d 695 (Fed. Cir. 2001) ........................................................... 14

*McKinney v. McDonald*,
    796 F.3d 1377 (Fed. Cir. 2015) ......................................................... 13

*Motor Vehicle Mfr.'s Ass'n v. State Farm Mut. Auto. Ins.*,
    463 U.S. 29 (1983) ................................................................. 13, 20, 22

*Norton v. Southern Utah Wilderness All.*,
    542 U.S. 55 (2004) ............................................................................ 14

*Prysmian Cables & Systems USA, LLC v. United States*,
    756 F. Supp. 3d 1337 (Ct. Int'l Trade 2025) ....................... 10, 14, 15, 16

*SEC v. Chenery Corp.*,
    332 U.S. 194 (1947) ........................................................................... 14

*United States v. Zubaydah*,
    595 U.S. 195 (2022) ........................................................................... 20

*Ziglar v. Abbasi*,
    582 U.S. 120 (2017) ........................................................................... 20

ii

**Statutes**

5 U.S.C. § 706 ............................................................................................ passim

19 U.S.C. § 1862 ...................................................................................... 1, 3, 16

28 U.S.C. § 1581 ........................................................................................ 12, 13

28 U.S.C. § 2636 ............................................................................................. 10

28 U.S.C. § 2640 ............................................................................................. 12

**Regulations**

15 C.F.R. Pt. 705 ........................................................................................ passim

**Other Authorities**

*Adjusting Imports of Aluminum Into the United States*,
   *Proclamation 9704*, 83 Fed. Reg. 11,619 (Mar. 8, 2018) ................................. passim

*Adjusting Imports of Aluminum Into the United States*,
   *Proclamation 10895*, 90 Fed. Reg. 9807 (Feb. 10, 2025) ................................. passim

*Adjusting Imports of Steel Into the United States*,
   *Proclamation 9705*, 83 Fed. Reg. 11,625 (Mar. 8, 2018) ................................. passim

*Adjusting Imports of Steel Into the United States*,
   *Proclamation 10896*, 90 Fed. Reg. 9817 (Feb. 10, 2025) ................................. passim

*Adoption and Procedures of the Section 232 Steel and Aluminum Tariff Inclusions Process*,
   90 Fed. Reg. 18,780 (Dep't of Commerce May 2, 2025) ........................................... 5

*Requirements for Submissions Requesting Exclusions From the Remedies Instituted in
   Presidential Proclamations Adjusting Imports of Steel Into the United States and Adjusting
   Imports of Aluminum Into the United States; and the Filing of Objections to Submitted
   Exclusion Requests for Steel and Aluminum*, 83 Fed. Reg. 12,106 (Dep't of Commerce Mar.
   19, 2018) ................................................................................................. 5

*Section 232 Steel and Aluminum Tariff Exclusions Process*, 85 Fed. Reg. 81,060 (Dep't of
   Commerce Dec. 14, 2020) ............................................................................ 5

*Submissions of Exclusion Requests and Objections to Submitted Requests for Steel and
   Aluminum*, 83 Fed. Reg. 46,026, 46,027 (Dep't of Commerce Sept. 11, 2018) ................. 6

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

_____
                                                    )
PRYSMIAN CABLES AND SYSTEMS        )
USA, LLC,                                           )
                                                    )
              Plaintiff,                            )
                                                    )        Case No. 24-00101
       v.                                           )
                                                    )
UNITED STATES, *et al.*,                           )
                                                    )
              Defendants,                           )
_____)

### ORDER

On consideration of plaintiff's motion for judgment on the agency record, defendants'

response, and all other pertinent papers, it is hereby

ORDERED that the motion is denied, and it is further

ORDERED that judgment shall enter in favor of the United States.

Dated:_____, 2025                    _____
       New York, N.Y.                                          JUDGE

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

_____
                                              )
PRYSMIAN CABLES AND SYSTEMS                   )
USA, LLC,                                     )
                                              )
          Plaintiff,                          )
                                              )     Case No. 24-00101
     v.                                       )
                                              )
UNITED STATES, *et al.*,                      )
                                              )
          Defendants,                         )
_____)

**DEFENDANTS' RESPONSE TO PLAINTIFF'S**
**MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Pursuant to Rule 56.1 of the Rules of this Court, defendant, the United States, respectfully submits this response to the motion for judgment on the agency record and supporting brief (Br.) filed by plaintiff, Prysmian Cables and Systems USA, LLC (Prysmian). Prysmian challenges the Department of Commerce's decisions to deny or partially deny four requests for exclusions from import measures imposed on certain steel articles by the President under section 232 of the Trade Expansion Act of 1962, 19 U.S.C. § 1862, as amended (Section 232). With respect to the partially denied exclusion, Prysmian also challenges Commerce's decision not to add an authorized importer of record to the exclusion. The Court should deny Prysmian's challenges because Commerce's actions were not arbitrary, capricious, or contrary to law.

**STATEMENT PURSUANT TO USCIT RULE 56.1(c)(1)**

**I.     The Administrative Determinations Under Review**

The administrative determinations under review are Commerce's denials of Prysmian's

requests to exclude certain imports of steel coils and aluminum rod from the Section 232 national security duties on steel and aluminum articles. Specifically, Prysmian challenges Commerce's denial of three requests (Requests Nos. 261115, 402427, and 291723). Additionally, Prysmian challenges two actions related to a fourth request (Request No. 261137): Commerce's partial denial of the request and Commerce's decision to not add an authorized importer of record to the portion of the request that was granted.

II.    <u>**Statement Of The Issues**</u>

1.    Whether Commerce has unlawfully withheld or unreasonably delayed agency action on any of Prysmian's requests at issue when Commerce has denied each request.

2.    Whether Prysmian has demonstrated that Commerce's decisions denying or partially denying Prysmian's requests to exclude certain imports of aluminum rod from Section 232 tariffs were arbitrary, capricious, or contrary to law when Commerce's decision to deny those requests were based on national security grounds.

3.    Whether Prysmian has demonstrated that Commerce's decision not to allow Prysmian to add an authorized importer of record to a partially granted exclusion requests was arbitrary, capricious, or contrary to law when Prysmian's request was not made until after the exclusion window had closed, and Commerce only granted importer of record changes for active exclusions.

4.    Whether Prysmian has demonstrated that Commerce's decisions denying Prysmian's requests to exclude certain imports of steel coil and aluminum rod from Section 232 tariffs were arbitrary, capricious, or contrary to law when those decisions were made only after the President revoked Commerce's authority to grant exclusion requests.

## STATEMENT OF FACTS

I.   **The Section 232 Investigation And The President's Proclamations**

Section 232 authorizes the President to adjust imports of an article and its derivatives if the President concurs with a finding by the Secretary of Commerce (the Secretary) that such imports threaten to impair the national security.  *See generally* 19 U.S.C. § 1862.

The Secretary initiated an investigation to determine the effect of steel and aluminum imports on the national security, which was conducted by the Bureau of Industry and Security (BIS), a Commerce sub-agency.  *See generally* U.S. Dep't of Commerce, *The Effect of Imports of Steel on the National Security* (Jan. 11, 2018) (*Steel Report*), *available at* https://2017-2021.commerce.gov/sites/default/files/the_effect_of_imports_of_steel_on_the_national_security_-_with_redactions_-_20180111.pdf; U.S. Dep't of Commerce, *The Effect of Imports of Aluminum on the National Security* (Jan. 17, 2018) (*Aluminum Report*), *available at* https://www.commerce.gov/sites/default/files/the_effect_of_imports_of_aluminum_on_the_natio nal_security_-_with_redactions_-_20180117.pdf.  The Secretary issued reports and recommendations to the President, finding that steel and aluminum imports are "weakening {the United States'} internal economy" and "threaten to impair the national security as defined in Section 232."  *Steel Report* at 5; *Aluminum Report* at 5.

After considering the Secretary's reports, the President issued *Proclamation 9704* and *Proclamation 9705,* in which he concurred with the Secretary's findings that aluminum and steel articles are being imported in such quantities and under such circumstances as to threaten to impair the national security of the United States, and announced measures on "adjusting imports of" steel and aluminum.  *Adjusting Imports of Aluminum Into the United States*, *Proclamation 9704*, 83 Fed. Reg. 11619 (Mar. 8, 2018) (*Proclamation 9704*); *Adjusting Imports of Steel Into*

3

*the United States*, *Proclamation 9705*, 83 Fed. Reg. 11625 (Mar. 8, 2018) (*Proclamation 9705*). The President established a 25 percent tariff on imports of certain steel articles and a 10 percent tariff on certain aluminum articles, effective March 23, 2018.

Simultaneously, the President authorized the Secretary of Commerce to provide relief from the tariffs for products determined not to be produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality or based upon specific national security considerations. *Proclamation 9704*, Cl. (3); *Proclamation 9705*, Cl. (3). The President explained that "relief shall be provided for" a steel or aluminum article "only after a request for exclusion is made by a directly affected party located in the United States." *Proclamation 9704*, Cl. (3); *Proclamation 9705*, Cl. (3). The President instructed Commerce to issue procedures for the requests for exclusion within 10 days after *Proclamation 9704* and *Proclamation 9705* were issued. *Proclamation 9704*, Cl. (4); *Proclamation 9705*, Cl. (4). In March 2018, Commerce promulgated regulations establishing the exclusion process envisioned in *Proclamation 9704* and *Proclamation 9705*. These regulations are described in greater detail below.

In February 2025, after years of processing exclusion requests under the 2018 regulations, the President revoked Commerce's authority to grant exclusion requests through *Proclamation 10895* and *Proclamation 10896*. *Adjusting Imports of Aluminum Into the United States*, *Proclamation 10895*, 90 Fed. Reg. 9807 (Feb. 10, 2025) (*Proclamation 10895*); *Adjusting Imports of Steel Into the United States*, *Proclamation 10896*, 90 Fed. Reg. 9817 (Feb. 10, 2025) (*Proclamation 10896*). Specifically, *Proclamation 10895* provides that "the provisions of clause 3" of *Proclamation 9704* "are hereby revoked" and that "the Secretary shall not consider any new product exclusion requests under clause 3." *Proclamation 10896*, Cl. (6), (8). Indeed, the President instructed that "the Secretary shall take all actions, including publication in the *Federal*

*Register*, necessary to terminate the product exclusion process." *Id.*, Cl. (6).  Likewise,

*Proclamation 10896* provides that "the provisions of clause 3" of *Proclamation 9705* "are

hereby revoked" and that "as of 11:59 p.m. eastern time" on February 10, 2025, "the Secretary

shall not consider any product exclusion requests or renew any product exclusion requests in

effect as of that date."  *Proclamation 10896*, Cl. (7).

## II.    Commerce's Administrative Procedures For Requesting Product Exclusions

On March 19, 2018, Commerce promulgated an interim final rule, establishing the

exclusion process envisioned in *Proclamation 9704* and *Proclamation 9705*.  *Requirements for*

*Submissions Requesting Exclusions From the Remedies Instituted in Presidential Proclamations*

*Adjusting Imports of Steel Into the United States and Adjusting Imports of Aluminum Into the*

*United States; and the Filing of Objections to Submitted Exclusion Requests for Steel and*

*Aluminum*, 83 Fed. Reg. 12,106 (Dep't of Commerce Mar. 19, 2018), codified at 15 C.F.R. Pt.

705, Supp. 1.

Under the version of the regulation in effect when Prysmian submitted its exclusion

requests,[1] only directly affected individuals or organizations (*e.g.*, construction, manufacturing,

or supplying steel product to users) located in the United States could submit an exclusion

request.  *Id.* § (c)(1).  Commerce would approve exclusions on a product basis, and the approvals

---

[1]  Prysmian filed the exclusions requests at issue between November 2021 and September 2024.  AR0010, AR0088, AR0221, AR0338.  At that time, the operative version of the regulations was the version that went into effect December 14, 2020.  *See Section 232 Steel and Aluminum Tariff Exclusions Process*, 85 Fed. Reg. 81,060 (Dep't of Commerce Dec. 14, 2020).  Pursuant to *Proclamation 10895* and *Proclamation 10896*, the current version of the regulations provides a process for "how directly affected parties located in the United States may submit requests for inclusions to duties imposed by the President."  *See Adoption and Procedures of the Section 232 Steel and Aluminum Tariff Inclusions Process*, 90 Fed. Reg. 18,780 (Dep't of Commerce May 2, 2025) (allowing requests for derivative products to be *included* in the list of items to which the tariff applies, whereas the prior process allowed requests from individual companies to seek *exclusion* from paying the tariffs for their requested products).

were generally limited to the individual or organization that submitted the request.  *Id.* § (c)(2).

Requestors were required to complete and submit a fillable form available on Commerce's website, *id.* § (b), as well as specify the business activities in the United States with which they were engaged that qualified the individual or organization to be directly affected and thus eligible to submit a request, *id.* § (c)(5)(i).  "The request {was recommended to} clearly identify, and provide support for, the basis upon which the exclusion {was} sought."  *Id.*

Commerce reviewed each request to determine whether an article described in the request meets one of three criteria: (1) the article was not produced in the United States in a sufficient and reasonably available amount, (2) the article was not produced in the United States in a satisfactory quality, or (3) specific national security considerations.  *Id.* § (c)(6).

Any individual or organization that domestically manufactured steel or aluminum articles could file objections to exclusion requests.  *Id.* § (d)(1).  An objection "{was recommended to} clearly identify, and provide support for, its opposition to the proposed exclusion."  *Id.* § (d)(4).  Requestors could also submit rebuttals and objectors could submit surrebuttals.  *Id.* § (f)-(g).

Commerce reviewed an exclusion request based on the information included in the exclusion request, any objections to an exclusion request, any rebuttals to the objections made by an individual or organization that submitted the exclusion request, and any surrebuttals.[2]  *See id.* § (h)(2)(i).  For exclusion requests that received no objections, Commerce would post a decision granting the request if it identified no national security concerns.  *Id.* § (h)(2)(ii).

---

[2]  Commerce subagencies, BIS and the International Trade Administration (ITA), evaluated these exclusion requests.  BIS was "the lead agency" in deciding whether to grant a request, and ITA "analyz{ed} requests and objections to evaluate whether there {wa}s domestic production available to meet the requestor's product needs."  *Submissions of Exclusion Requests and Objections to Submitted Requests for Steel and Aluminum*, 83 Fed. Reg. 46,026, 46,027 (Dep't of Commerce Sept. 11, 2018).  ITA, upon completion of its review, would provide BIS with a recommendation as to whether an exclusion request should be granted.

Approved exclusions would be effective five business days after publication of
Commerce's response granting an exclusion, and, on that date, "the requester w{ould} be able to
rely upon the approved exclusion request in calculating the duties owed on the product imported
in accordance with the terms listed in the approved exclusion request." *Id.* § (h)(2)(iii)(A).
Commerce further directed that exclusions would "generally be approved for one year." *Id.*
§ (h)(2)(iv).

III.    **Prysmian's Exclusion Requests**

Prysmian is a conductive cable manufacturer that imports aluminum rod and steel coils
from foreign countries, including Russia. *See* AR0019, AR0097.[3]  As relevant to Prysmian's
motion for judgment on the agency record, Prysmian applied for four exclusions from Section
232 tariffs on steel or aluminum articles between November 2021 and September 2024.

A.    **Prysmian's November 2021 Exclusion Requests**

In November 2021, Prysmian submitted two exclusion requests covering aluminum rod
that Prysmian claimed was not available in the United States.  AR0013, AR0088.  With respect
to Request No. 261115, Prysmian imported the aluminum rod at issue from Russia.  AR0019.
With respect to Request No. 261137, Prysmian imported the aluminum rod from Russia, India,
and Bahrain.  AR0097.  Two companies filed objections to both requests.  AR0001-02, AR0084-
85.

After considering the exclusion requests, objections, rebuttals, and surrebuttals, ITA
recommended that the exclusion requests be granted.  AR0005, AR0086.  Specifically, ITA
concluded that the objectors had not met "quality, quantity, and/or timeliness criteria" to

---

[3]  Citations to the administrative record (AR) refer only to citations to the public
administrative record available at ECF No. 43.

establish domestic availability.  AR0005.  However, BIS determined that "overriding national security concerns" required that Request No. 261115 be denied, and that Request No. 261137 be partially denied, notwithstanding any analysis of domestic availability.  AR0003-04, AR0086-87.

BIS determined that "the United States has a vital national interest in imposing economic costs on Russia and/or Belarus in response to the invasion of Ukraine."  AR0003.  Indeed, "the aluminum industry plays a key defense and wealth generation role in Russia and Belarus, and thus it is consistent with overarching national security policy to cease issuing exclusions from Section 232 Duties for imports of aluminum from Russia and Belarus."  AR0003.  Because only some imports under Request No. 261137 came from Russia, that request was partially denied as to the Russia imports and partially granted as to the imports from the remaining countries.  AR0087.  Request No. 261115 was denied on July 31, 2022, AR0004, and Request No. 261137 was partially approved and partially denied on February 12, 2023.  AR0087.

Over a year after Commerce partially granted Request No. 261137 and thus after the exclusion validity window had expired, 15 C.F.R. Pt. 705, Supp. 1, § (h)(2)(iv), Prysmian emailed Commerce on April 2, 2024, requesting to add an authorized importer of record under this request.  AR0192.  Commerce responded that same day, indicating it was "unable to process {the} IOR change cause submission 261137 {had} expired."  AR0195.  Commerce noted that it only accepts "IOR changes that are granted *and active*."  AR0195 (emphasis added).  Prysmian then sought clarification on Commerce's "basis for limiting IOR changes to those Exclusion Requests that are still active."  AR0196.  In response, Commerce explained that:

> BIS does not accept retrospective changes to the Importer(s) of Record associated with expired Exclusion Requests, for the purposes of a Post-Summary Correction or otherwise. BIS affirms that Importer of Record changes are solely treated as prospective changes for future entries under an active Granted Exclusion.

AR0200.  This approach is memorialized in the "BIS Checklist for the submission of Portal Approvals & IOR Changes to CBP."  AR0186-188.  The checklist provides that "changes to expired exclusions can't be processed."  AR0187.

>    **B.**    **Prysmian's January And September 2024 Exclusion Requests**

Prysmian submitted two additional exclusion requests for steel coils and aluminum rods and in January and September 2024, respectively.  AR0221, AR0338.  Domestic producers objected to both requests.  AR0212-13, AR0330.  With respect to the September 2024 request (Request No. 391723) covering aluminum rods, ITA recommended approving the request with respect to 70 percent of the requested quantity.  AR0215.  ITA recommended denying the January 2024 request covering laminated tin free steel (Request No. 402427) because at least one objector "meets the quality, quantity, and timeliness criteria."  AR0332.

However, before either request was approved or denied, the President issued *Proclamation 10895* and *Proclamation 10896* on February 10, 2025.  On February 11, 2025, Commerce notified Prysmian that pursuant to the proclamations, "Commerce is no longer processing Section 232 Exclusion Requests effective 11:59 PM Eastern Time on February 10, 2025."  AR0395.  Commerce also noted that "pending Section 232 Exclusion Requests should be assumed void pending their rejection and/or denial by Commerce."  AR0395.  Shortly thereafter, on March 11, 2025, Commerce issued identical decision memoranda for each exclusion request, explaining that:

>    The President in Proclamations 10895 and 10896 of February 10, 2025 directed that the Secretary of Commerce shall not consider any new product exclusion requests under Proclamations 9704 and 9705, as modified by Proclamations 9776 and 9777, or renew any such product exclusions in effect as of February 10, 2025. Proclamations 10895 and 10896 further revoked those provisions of prior Proclamations which authorized the Secretary to grant relief for certain steel and aluminum products from the duties or

> quantitative restrictions described in those Proclamations, and
> directed the Secretary to take all actions necessary to terminate the
> Section 232 Exclusions Process.

AR0214, AR0331.  Accordingly, Commerce denied the requests "without prejudice and without any determination on the merits" of the requests.  AR0214, AR0331.

## IV.    <u>Procedural History</u>

On June 7, 2024, Prysmian filed its complaint in this case challenging Commerce's denial of 17 exclusion requests, alleging that the denials were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, warranting relief under 5 U.S.C. § 706(2). ECF No. 1.  In response, we moved to partially dismiss Prysmian's complaint with respect to 15 of those denials, arguing that Prysmian's claims were untimely.  ECF No. 9.  Prysmian amended its complaint, but rather than removing the untimely claims, Prysmian added a claim for all 17 requests that Commerce "unlawfully withheld or unreasonably delayed" agency action, warranting relief under 5 U.S.C. § 706(1).  ECF No. 16.  In response, we moved to dismiss all of Prysmian's claims under 5 U.S.C. § 706(1) because Prysmian did not allege that Commerce failed to take a discreet action.  ECF No. 21.  Further, we continued to seek dismissal of Prysmian's claims with respect to 15 of the 17 denials because those claims were untimely.  *Id.*

The Court granted our motion to partially dismiss, holding that Prysmian's claims under 5 U.S.C. § 706(1) must be dismissed because a denial is not the same as a failure to act. *Prysmian Cables & Systems USA, LLC v. United States*, 756 F. Supp. 3d 1337, 1342 (Ct. Int'l Trade 2025).  The Court held that a denial "is not an action unlawfully withheld or unreasonably delayed," and thus Prysmian cannot state a claim under 5 U.S.C. § 706(1).  *Id.*  The Court also held that Prysmian's claims regarding 15 of the exclusion requests fell outside the applicable two-year statute of limitations under 28 U.S.C. § 2636(i).  *Id.* at 1346.  Accordingly, following

the Court's decision, only Prysmian's claims challenging Commerce's denials of Request Nos. 261115 and 261137 under 5 U.S.C. § 706(2) remained. *Id.*

After we filed an answer and the administrative record with respect to Prysmian's remaining claims, Prysmian sought leave to amend its complaint again. ECF No. 38. Although we did not believe Prysmian's second amended complaint presented any meritorious claims, we did not oppose Prysmian's motion to leave and instead proposed that we address Prysmian's new claims when briefing the merits of the case. ECF No. 39. Prysmian's second amended complaint added six claims concerning three exclusions requests. ECF No. 41. Prysmian added claims under 5 U.S.C. § 706(1) and 5 U.S.C. § 706(2) for Requests No. 402427 and 391723 after the President issued *Proclamation 10895* and *Proclamation 10896*, as explained above. *Id.* Prysmian also added claims under 5 U.S.C. § 706(1) and 5 U.S.C. § 706(2) with respect to Request No. 261137, based on Commerce's denial of Prysmian's request to add an authorized importer of record after the exclusion window had closed. *Id.* We address each claim below.

## <u>SUMMARY OF ARGUMENT</u>

The Court should sustain Commerce's decisions to deny or partially deny the four exclusion requests at issue, as well as Commerce's decision to deny Prysmian's request to add an authorized importer of record.

At the outset, Prysmian continues to assert claims this Court has already rejected – that Commerce has failed to act under 5 U.S.C. § 706(1) because Commerce has made decisions that Prysmian disagrees with. But as the Court already held in granting our motion to partially dismiss, a denial is different than a failure to act that can be remedied under 5 U.S.C. § 706(1), and thus Prysmian's claims under section 706(1) fail as a matter of law.

Further, Commerce lawfully denied or partially denied two exclusion requests due to

national security considerations following Russia's invasion of Ukraine, as Commerce's regulations empower it to do. Prysmian's requests sought to exclude imports from Russia from the President's imposition of Section 232 tariffs. In response to Prysmian's two exclusion requests, as well as to all other exclusion requests for aluminum from Russia following its Ukrainian invasion, Commerce explained why imposing economic costs on Russia and stymying Russia's aluminum industry was in the national security interests of the United States. Such consideration was well within Commerce's authority and discretion under *Proclamation 9704* and Commerce's regulations, and this Court should not second guess Commerce's judgment now.

Commerce also lawfully denied Prysmian's request to add an importer of record to a partially granted exclusion request. Prysmian requested the change *after* the exclusion window had expired, and it was Commerce's established practice not to accept such changes after the exclusion window closed, as such changes would only apply prospectively. Commerce considered the relevant evidence, followed its practice, and explained its decision, and thus, its decision should be sustained.

Finally, after the President issued *Proclamation 10895* and *Proclamation 10896*, Commerce lacked authority to grant *any* exclusion requests. Accordingly, Commerce denied all pending exclusion requests and explained that its authority to grant such requests had been revoked by the President. That explanation was both clear and correct, and Commerce's denials of two of Prysmian's request on this basis must be sustained.

## ARGUMENT

### I. Standard Of Review

In a civil action brought under 28 U.S.C. § 1581(i), "the Court of International Trade

shall review the matter as provided in section 706 of title 5." 28 U.S.C. § 2640(e). "When

reviewing a decision of the Court of International Trade in a suit brought pursuant to 28 U.S.C.

§ 1581(i), {the court} appl{ies} the standard of review set forth by the Administrative Procedure

Act, and will 'hold unlawful and set aside {agency} action, findings, and conclusions found to

be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'"

*Canadian Lumber Trade Alliance v. United States*, 517 F.3d 1319, 1331 (Fed. Cir. 2008)

(quoting 5 U.S.C. § 706(2)).

"The scope of {judicial} review under the 'arbitrary and capricious' standard is narrow

and a court is not to substitute its judgment for that of the agency." *McKinney v. McDonald*, 796

F.3d 1377, 1383 (Fed. Cir. 2015) (quoting *Motor Vehicle Mfr.'s Ass'n v. State Farm Mut. Auto.

Ins*., 463 U.S. 29, 43 (1983)). Commerce "must examine the relevant data and articulate a

satisfactory explanation for its action" including "a rational connection between the facts found

and the choice made." *Id.*

As this Court has held,

> The arbitrary and capricious standard of review is {also} narrower
> than the substantial evidence standard, and the court will therefore
> remand {Commerce's} . . . determination only if it finds that 'the
> agency has relied on factors which Congress has not intended it to
> consider, entirely failed to consider an important aspect of the
> problem, offered an explanation for its decision that runs counter
> to the evidence before the agency, or is so implausible that it could
> not be ascribed to a difference in view or the product of agency
> expertise."

*Former Emps. of Alcatel Telecomm. Cable v. Herman*, 24 CIT 655, 658–59 (2000) (quoting

*Motor Vehicle*, 463 U.S. at 43).

While the Court "'{m}ay not supply a reasoned basis for the agency's action that the

agency itself has not given,' {it} will, however, 'uphold a decision of less than ideal clarity if the

agency's path may reasonably be discerned.'" *Motor Vehicle*, 463 U.S. at 43 (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947), *and Bowman Transp. Inc. v. Arkansas-Best Freight System*, 419 U.S. 281, 285, 286 (1974)); *see also F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009) (describing the arbitrary and capricious standard of review as "narrow").

## II.    Prysmian's Claims Under 5 U.S.C. § 706(1) Fail As A Matter Of Law Because Commerce Has Acted On Every Request Made By Prysmian

This Court has already held that Prysmian cannot assert a claim under 5 U.S.C. § 706(1) when Commerce denies a request made by Prysmian. *Prysmian*, 756 F. Supp. 3d at 1342. Indeed, the Supreme Court has held that "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required* to take." *Norton v. Southern Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis in original). Thus, "a failure to act is not the same thing as a denial." *Id.* at 63 (internal quotations omitted). As the Supreme Court explained, a denial "is the agency's act of saying no to a request," whereas a failure to act "is simply the omission of an action without formally rejecting a request." *Id.*

Undeterred by the Supreme Court's holding and this Court's sound decision dismissing its claims under 5 U.S.C. § 706(1), Prysmian continues to assert claims under section 706(1) with respect to Request Nos. 261137, 402427, and 391723. However, Commerce denied each request at issue, and Prysmian's claims fail under the law of the case doctrine and on the merits.

The "law of the case doctrine," which "bars retrial of issues that were previously resolved," applies here and bars Prysmian from retrying issues that this Court decided in ruling on our motion to dismiss. *Ford Motor Co. v. United States*, 992 F. Supp. 2d 1346, 1355 (Ct. Int'l Trade 2014) (quoting *Intergraph Corp. v. Intel Corp.*, 253 F.3d 695, 697 (Fed. Cir. 2001)). Specifically, the Court held that Prysmian cannot assert a claim under 5 U.S.C. § 706(1) when Commerce has denied a request made by Prysmian, even if Prysmian believes that denial was

unlawful.  *Prysmian*, 756 F. Supp. 3d at 1342.  Prysmian's new claims under 5 U.S.C. § 706(1) present the same issue this Court has already rejected, and Prysmian has not asserted any reason why the Court can or should revisit the Court's previous decision.  Accordingly, the claims are barred under the law of the case doctrine.

Turning to the merits, with respect to Request No. 261137, Prysmian asserts that Commerce unlawfully withheld or unreasonably delayed a decision on Prysmian's request to add an authorized importer of record.  Br. at 4.  However, Commerce plainly denied that request, stating that it was "unable to process {the} IOR change because submission 261137 is expired." AR0195.  After Prysmian sought clarification, Commerce further explained that:

> BIS does not accept retrospective changes to the Importer(s) of Record associated with expired Exclusion Requests, for the purposes of a Post-Summary Correction or otherwise. BIS affirms that Importer of Record changes are solely treated as prospective changes for future entries under an active Granted Exclusion.

AR0200.  Prysmian may disagree with the outcome of Commerce's decision, but such an argument is a question to be decided under 5 U.S.C. § 706(2), not 5 U.S.C. § 706(1).  *Prysmian*, 756 F. Supp. 3d at 1342.

For Request Nos. 402427 and 391723, Prysmian asserts that Commerce unlawfully withheld or unreasonably delayed decisions on the exclusion requests.  Br. at 4.  However, Commerce issued decisions denying both requests on the basis that *Proclamation 10895* and *Proclamation 10896* revoked Commerce's authority to grant any exclusion requests.  AR0214, AR0331.  Because Commerce "rendered a decision," Prysmian's claims under 5 U.S.C. § 706(1) fail.  *Prysmian*, 756 F. Supp. 3d at 1342.

Further, Prysmian's motion does not meaningfully argue or explain how Commerce unlawfully withheld or unreasonably delayed any decisions.  Instead, Prysmian simply quotes the

15

statute and proceeds to argue why it believes Commerce's decisions were wrong.  *See* Br. at 2, 4, 15-20.  As the Court explained, such arguments present questions under 5 U.S.C. § 706(2), not 5 U.S.C. § 706(1).  *Prysmian*, 756 F. Supp. 3d at 1342.  Accordingly, this Court should continue to hold that Prysmian's challenges under 5 U.S.C. § 706(1) fail as a matter of law.

## III.    Commerce Reasonably Denied Prysmian's November 2021 Requests On National Security Grounds

Prysmian maintains that Commerce's denials of Request Nos. 261115 and 261137 based on national security considerations were unlawful for two reasons, specifically arguing that: (1) Commerce may only grant exclusions on national security considerations and lacks permission to deny exclusions on that basis; and (2) Commerce's basis lacked "any foundation in the record or common sense" because the requests were filed before Russia invaded Ukraine. Br. at 15-16.  Both arguments fail, and the Court should sustain Commerce's reasoned decision-making.

**First**, Commerce had the authority to deny exclusion requests based on national security considerations.  To begin, Section 232 is aimed at protecting national security considerations. *See generally* 19 U.S.C. § 1862.  Section 232 authorizes the President to adjust imports of an article and its derivatives if the President concurs with a finding by the Secretary that such imports threaten to impair the national security.  Pursuant to this statutory authority, the President determined in *Proclamation 9704* that imports of certain aluminum products should be subject to a 10 percent tariff in order to protect the national security of the United States. *Proclamation 9704*, cl. (2).  The President authorized, but did not mandate, that Commerce provide relief from the tariff based on whether the product at issue is "produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality" and "*based upon specific national security considerations*."  *Id.*, cl. (3) (emphasis added).  Prysmian's

position—that Commerce must ignore national security considerations that would warrant denying an exclusion request—is simply not supported by the text of Section 232 or *Proclamation 9704*. And it runs contrary to the stated purpose of both, which is to avert threats to the national security of the United States caused by imports of aluminum products.

Moreover, Prysmian is incorrect in its understanding that Commerce's regulations do not allow Commerce to deny an exclusion request based on national security considerations. The operative version of the regulations provide that Commerce will evaluate "specific national security considerations" when considering whether to grant an exclusion request. 15 C.F.R. Pt. 705, Supp. 1, § (c)(5)(i). To be sure, national security considerations could be a basis to grant an exclusion request. *Id.* But the regulations also provided that national security considerations can be a basis to deny an exclusion request. For example, the regulations provided that if an exclusion request received no objections, Commerce would streamline consideration of the request and grant the request if "BIS identifies no national security concerns." *Id.* § (h)(2)(ii). The regulation provided:

> If an exclusion request's 30–day comment period in the 232 Exclusions Portal has expired and no objections have been submitted, BIS will immediately assess the request for any national security concerns. If BIS identifies no national security concerns, it will post a decision granting the exclusion request in the 232 Exclusions Portal.

*Id.*

Accordingly, the regulations unequivocally contemplated that an exclusion request could be granted *or denied* based on national security considerations. Here, Commerce followed its regulation by considering national security concerns before granting Prysmian's exclusion requests. Commerce determined, as it was permitted to do, not to exercise the authority granted by the President to grant an exclusion request because doing so would run counter to the interest

the tariffs sought to protect in the first place— the national security of the United States.

**Second**, Commerce's denials based on national security considerations was not only permitted but also the product of reasoned decision-making.  Specifically, Commerce determined that "the United States has a vital interest in imposing economic costs on Russia and/or Belarus in response to the invasion of Ukraine."  AR0003.  Further, "the aluminum industry plays a key defense and wealth generation role in Russia and Belarus, and thus it is consistent with overarching national security policy to cease issuing exclusions from Section 232 Duties for imports of aluminum from Russia and Belarus."[4]  AR0003.  Prysmian does not contest Commerce's rationale, and instead argues that the rationale should not apply to Prysmian because it submitted its request before Russia invaded Ukraine.  Br. at 16.  Prysmian's argument is flawed.

Although Prysmian submitted its exclusion requests prior to Russia invading Ukraine, Commerce did not complete review of the requests until July 31, 2022, and February 12, 2023, months after Russia's invasion.  AR0004, AR0087.  Thus, at the time of Commerce's decisions, Russia had invaded Ukraine, and thus the most current national security considerations were at play.  Further, granted exclusion requests were generally approved "for one year from the date of the signature on the decision memo."  15 C.F.R. Pt. 705, Supp. 1, § (h)(2)(iv).  Accordingly, even though Prysmian submitted its November 2021 requests before Russia's February 2022 invasion of Ukraine, the requests, if granted, would have been effective *after* the invasion.

Prysmian also argues that the decision to deny its requests was arbitrary and capricious

---

[4]  Not only was Commerce's decision reasonable on its face, but it was also consistent with U.S. policy, which has been aimed at sanctioning Russia since February 2022.  *See* Russia's War Against Ukraine: U.S. Policy and the Role of Congress, IF12277 (Dec. 23, 2024), available at https://www.congress.gov/crs-product/IF12277.

because "Prysmian had already purchased the subject aluminum rod when the Department rendered its denials" and thus "the denials imposed no economic costs on Russia." Br. at 16. Prysmian fails to cite any record evidence to support this proposition. Attorney statements are not evidence, *Gilda Indus., Inc. v. United States*, 446 F.3d 1271, 1281 (Fed. Cir. 2006), and are certainly not record evidence that Commerce failed to consider in reaching its decision.

Moreover, even if Prysmian could point to record evidence supporting its claim, the argument misses the point. When a requestor places an order before an exclusion request is granted, it accepts the risk that it may have to pay the tariff if its exclusion is denied. If a requestor wishes to avoid this risk, it may wait until after an exclusion request is granted to place its order. It is up to the requestor to decide which level of risk they prefer. Regardless of when a requester makes the business decision to place an order for an imported product, Commerce's role is to determine whether national security considerations warrant granting or denying that request. Prysmian's logic elevates its individual commercial business decisions over national security considerations.

Prysmian was free to make the business decision to purchase aluminum rod from Russia before it knew whether its exclusion requests would be granted, but it is neither Commerce's nor the Court's role to relieve Prysmian of the consequences of that decision when it turned out that its requests were denied based on national security consideration. Requesters are not able to avoid a national security analysis simply by placing orders before Commerce decides whether to grant an exclusion request. Here, because the requested exclusion would allow Prysmian to import aluminum from Russia free from Section 232 tariffs, Commerce determined the requests were contrary to national security considerations.

In short, Commerce considered the relevant evidence and the path to its decisions is

easily discernible, satisfying its obligations under the APA. *Motor Vehicle*, 463 U.S. at 43. That Prysmian merely disagrees with Commerce's analysis, particularly in the realm of national security concerns, is no basis for overturning Commerce's decisions. *See Ziglar v. Abbasi*, 582 U.S. 120, 142 (2017) ("courts have shown deference to what the Executive Branch has determined is essential to national security" (cleaned up)); *United States v. Zubaydah*, 595 U.S. 195, 205 (2022) ("courts must exercise the traditional reluctance to intrude upon the authority of the Executive in military and national security affairs" (cleaned up)). The Court should sustain Commerce's denials.

## IV.    Commerce Reasonably Rejected Prysmian's Request To Add An Authorized Importer Of Record After The Exclusion Window For Request No. 261137 Closed

In addition to challenging Commerce's partial denial of Request No. 261137, Prysmian also challenges Commerce's denial of Prysmian's request to add an authorized importer of record for the granted portion of the request. According to Prysmian, Commerce's refusal to add an authorized importer of record after the exclusion window closed was contrary to law and Commerce's own policy. Br. at 17-18.

At the outset, although Prysmian contends that Commerce failed to "identify any legal authority justifying its refusal," Prysmian likewise fails to point to any provision of Section 232, any Presidential Proclamation, or Commerce's regulations that mandate Commerce to add an authorized importer of record after the exclusion window has closed. Br. at 17-18. That is because no such authority exists. Simply because Commerce chose to make such importer of record changes in limited circumstances, does not create an obligation for Commerce to grant Prysmian's request. Accordingly, Prysmian's suggestion that it was contrary to law for Commerce to refuse to add an importer of record is belied by the lack of authority in Prysmian's own brief.

Seemingly aware that its alleged entitlement to add an importer of record is not derived from statute, proclamation, or regulation, Prysmian argues that Commerce erred by failing to follow its own practice. Br. at 18. Prysmian is wrong. Prysmian cites Commerce's frequently asked questions, which state that "the Department of Commerce will accept non-substantive changes" to an exclusion request after it has been granted such as changes to "the importer of record." AR0176. According to Prysmian, because this language does not state that Commerce will only accept non-substantive changes during the exclusion window, Commerce's denial was contrary to its practice. Br. at 18. However, the "BIS Checklist for the submission of Portal Approvals & IOR Changes to CBP" makes clear that Commerce did not have a practice of accepting importer of record changes after the exclusion window had closed. The document states that "changes to expired exclusions can't be processed." AR0187. Further, Commerce explained that policy to Prysmian, stating:

> BIS does not accept retrospective changes to the Importer(s) of Record associated with expired Exclusion Requests, for the purposes of a Post-Summary Correction or otherwise. BIS affirms that Importer of Record changes are solely treated as prospective changes for future entries under an active Granted Exclusion.

AR0200.

In short, Prysmian was only permitted to request a change to the importer of record because Commerce's practice allowed such a request. However, that practice was limited to requests submitted during the exclusion window – that is, during the time period for which the exclusion would apply to entries of merchandise. Prysmian submitted its request to add an importer of record after the exclusion window had closed, and thus Commerce followed its practice by denying Prysmian's request.

Prysmian could have requested to add an authorized importer of record to its request at any point from November 10, 2021 (when it submitted its request) to February 12, 2024 (when the exclusion window closed).  AR0199.  In fact, on February 21, 2023, Commerce even sent Prysmian an email, informing Prysmian that it needed to update its importer of record.  AR0191.  Despite this notification, and despite the years that it had to request the importer of record change following its initial exclusion request submission, Prysmian chose to wait until April 2, 2024, to request the importer of record change that Commerce had informed Prysmian was needed in its February 2023 letter.  Prysmian cannot now fault Commerce for the consequences of its own delay.

Commerce considered the evidence, followed its practice, and offered a reasoned explanation for its practice, satisfying its obligations under the APA.  *Motor Vehicle*, 463 U.S. at 43.  Accordingly, Commerce's decision denying Prysmian's request to add an importer of record should be sustained.

**V.    Commerce Lacked Authority To Grant Any Exclusion Requests Following *Proclamation 10895* And *Proclamation 10896* And Thus Properly Denied Prysmian's Pending Requests**

Finally, Prysmian claims that Commerce erred by denying Request Nos. 402427 and 391723 following *Proclamation 10895* and *Proclamation 10896*.  Prysmian contends that the Proclamations only prohibit Commerce from granting exclusion requests filed after the *Proclamations* were issued.  Because Prysmian's requests were pending when the *Proclamations* were issued, Prysmian maintains that the *Proclamations* did not impact Commerce's ability to grant the requests and thus the stated basis for denial was flawed.  Not so.

*Proclamation 10896*, which covers imports of steel and thus applies to Request No. 402427, states that Commerce's authority "to grant relief for certain products from the additional

ad valorem duties or quantitative restrictions set forth in prior proclamations are hereby revoked." *Proclamation 10896*, cl. (7).  The use of the word "hereby revoked" indicates that the *Proclamation* annulled Commerce's authority to grant any requests by the words of the *Proclamation* itself (*i.e.* immediately).  HEREBY, Black's Law Dictionary (12th ed. 2024) ("By this document; by these very words"); REVOKE, Black's Law Dictionary (12th ed. 2024) ("To annul or make void by taking back or recalling; to cancel, rescind, repeal, or reverse").  That language is clear and unequivocal, and does not carve out *any* exceptions for Commerce to retain authority to grant exclusions requests pending when the *Proclamation* was issued.  If there were any doubt, the *Proclamation* then states: "As of 11:59 p.m. eastern time on the date of this proclamation, the Secretary shall not consider any product exclusion requests or renew any product exclusion requests in effect as of that date." *Proclamation 10896*, cl. (7).  Because Commerce's authority to grant exclusion requests derives from *Proclamation 9705*, and because that authority was revoked in *Proclamation 10986*, Commerce lacked authority to grant any exclusion requests, pending or otherwise, as of February 10, 2025.  Commerce's denial of Request No. 402427 sets forth this straightforward explanation, and the denial should be sustained.

Similarly, *Proclamation 10895*, which covers imports of aluminum and is thus applicable to Request No. 391723, states that Commerce "shall not consider any new product exclusion requests . . . or renew any such product exclusions in effect as of the date of this proclamation." *Proclamation 10895*, cl. (6).  Prysmian latches on to the word "new" and argues that the instruction only applies to exclusion requests submitted after the *Proclamation* was issued.  Br. at 19.  That interpretation is flawed.  Prysmian ignores the very next paragraph of the *Proclamation*, which states that "any provision" in other *Proclamations* "authorizing the

Secretary to grant relief for certain products from the additional ad valorem duties or quantitative restrictions set forth in the prior proclamations described herein are hereby revoked." *Proclamation 10895*, cl. (7). This language is once again clear and unequivocal, and demonstrates that any authority Commerce previously had to grant an exclusion request was annulled by the *Proclamation* itself. Simply stated, under the terms of clause (8), Commerce lacked authority to grant Prysmian's request.

Finally, even if the Court agreed with Prysmian that *Proclamation 10895* only revoked Commerce's authority to grant exclusion requests filed after the *Proclamation* was issued—a conclusion that would ignore clause (8) of the *Proclamation*—Request No. 402427 would be unaffected. As stated above, Request No. 402427 covered steel coil, and thus *Proclamation 10896* is the relevant proclamation. Because *Proclamation 10896* makes no mention of a "new" exclusion request, Commerce's denial of that request was lawful even under Prysmian's own argument.

In any event, both *Proclamations 10895* and *10896* expressly revoke Commerce's authority to grant an exclusion request, and Commerce thus lawfully denied both requests.

## <u>CONCLUSION</u>

For these reasons, we respectfully request that the Court sustain Commerce's determinations with respect to the four exclusion requests at issue and enter judgment in favor of the United States.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Tara K. Hogan
TARA K. HOGAN
Assistant Director

/s/ Kyle S. Beckrich
KYLE S. BECKRICH
Trial Attorney
Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel.: (202) 616-9322
Email:  Kyle.Beckrich@usdoj.gov

July 25, 2025                         *Attorneys for Defendants*

CERTIFICATE OF COMPLIANCE

Pursuant to Chambers Procedure 2(B)(2), the undersigned certifies that Defendants' Response to Plaintiff's Motion for Judgment on the Agency Record contains 7,033 words as computed by our word processing system, excluding those portions that do not count toward the word limitation. Our filing thus complies with the Court's Chambers Procedures.

/s/Kyle S. Beckrich
Kyle S. Beckrich