UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| PRYSMIAN CABLES AND SYSTEMS, USA, LLC<br><br>   Plaintiff,<br><br> - against -<br><br>UNITED STATES<br><br>and<br><br>HOWARD LUTNICK, *in his official capacity as Secretary of Commerce*,<br><br>   Defendants. | Case No. 24-00101 |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS
<u>MOTION FOR JUDGMENT ON THE AGENCY RECORD</u>**

                    Brad S. Keeton
                    FROST BROWN TODD LLP
                    Lexington Financial Center
                    250 W. Main Street, Suite 2800
                    Lexington, KY 40507
                    (859) 231-0000
                    bkeeton@fbtlaw.com
                    *Counsel for Plaintiff Prysmian
                    Cables and Systems, USA, LLC*

# **TABLE OF CONTENTS**

Page

ARGUMENT ........................................................................................................................... 2

I.   The Department's denials of ER 261115 in full and ER 261137 in part based on invalid and unauthorized national security considerations were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." .................................... 2

    A.   The Department lacked authority to deny exclusion requests on national security grounds. ................................................................................................ 3

    B.   The national security concerns cited by the Department in its denials are unsupported by the record or common sense. ......................................................... 5

II.  The Department's improper refusal to add Concord as an authorized importer of record under partially approved ER 261137 should be set aside as unlawful, and the Secretary should be compelled to perform his unambiguous duty to add Concord to the granted exclusion. .................................................................................................. 7

    A.   The Department had no legal basis for refusing to add Concord as an authorized importer of record. ................................................................................ 7

    B.   The Court should compel the Department to perform its unambiguous duty to add Concord as an authorized importer of record under ER 261137. .................... 8

III. The Court should set aside as unlawful the Department's decision to void ER 402427 and ER 391723 and should compel the Secretary to perform his unambiguous duties to evaluate Prysmian's entitlement to the requested exclusions and issue reasoned decision memoranda. .................................................................................................. 10

    A.   The Department's application of Proclamations 10895 and 10896 to void Prysmian's pending exclusion requests was contrary to their plain meaning and violated the presumption against retroactivity. ............................................. 10

        1.   The text of Proclamations 10895 and 10896 is clear that they apply prospectively to prohibit the Department from considering only new exclusion requests, not those pending when the Proclamations were issued. ............................................................................................................. 11

        2.   The Government's call for retroactive application of Proclamations 10895 and 10896 violates the deep-rooted presumption that laws should not be applied retroactively. ......................................................... 12

    B.   The Court should compel the Secretary to perform his unambiguous duties to evaluate Prysmian's entitlement to the requested exclusions and issue reasoned decision memoranda. ............................................................................ 13

CONCLUSION ..................................................................................................................... 15

CERTIFICATE OF COMPLIANCE .................................................................................... 16

CERTIFICATE OF SERVICE .............................................................................................. 16

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Arzio v. Shinseki*,
    602 F.3d 1343 (Fed. Cir. 2010)...............................................................................................4

*City of Philadelphia v. Bank of Am. Corp.*,
    609 F. Supp. 3d 269 (S.D.N.Y. 2022).....................................................................................8

*Del Mar v. United States*,
    173 Fed.Cl. 159 (Fed. Cir. 2024).............................................................................................8

*Halpern v. Principi*,
    384 F.3d 1297 (Fed. Cir. 2004)................................................................................................8

*Hicks v. Merit Sys. Prot. Bd.*,
    819 F.3d 1318 (Fed. Cir. 2016)..............................................................................................12

*Kaiser Aluminum & Chem. Corp. v. Bonjorno*,
    494 U.S. 827 (1990) (J. Scalia, concurring) .........................................................................13

*Landgraf v. USI Film Prods.*,
    511 U.S. 244 (1994)...............................................................................................................13

*Lindh v. Murphy*,
    521 U.S. 320 ..........................................................................................................................13

*Motor Vehicle Mfrs. Ass'n*,
    463 U.S.at 43...........................................................................................................................6

*N. Am. Foreign Trading Corp. v. U.S.*,
    600 F. Supp. 226 (Ct. Int'l Trade 1984) ...............................................................................13

*Norton v. Southern Utah Wilderness All.*,
    542 U.S. 55 (2004)............................................................................................................9, 15

*Policy & Research, LLC v. United States Dep't of Health & Human Servs.*,
    313 F. Supp. 3d 62 (D.D.C. 2018) ..........................................................................................5

*In re Sang Su Lee*,
    277 F.3d 1338 (Fed. Cir. 2002)............................................................................................5, 8

*Solenex, LLC v. Haaland*,
    626 F. Supp. 3d 110 (D.D.C. 2022) ................................................................................12, 13

*United States Fidelity & Guaranty Co. v. United States ex rel. Struthers Wells Co.*,
   209 U.S. 306 (1908) ...............................................................................................13

**STATUTES**

5 U.S.C. 706(1) ..................................................................................................................9

5 U.S.C. 706(2) ................................................................................................................12

5 U.S.C. § 706(1) ....................................................................................................... *passim*

5 U.S.C. § 706(2) ................................................................................................................1

Trade Expansion Act of 1962 Section 232 ........................................................... 4, 12, 15

**OTHER AUTHORITIES**

15 C.F.R. Pt. § (h)(2)(ii) .....................................................................................................4

83 Fed. Reg. 46058 ............................................................................................................2

83 Fed. Reg. 46059 ............................................................................................................4

83 Fed. Reg. 46060 ............................................................................................................6

90 Fed. Reg. 9812 ............................................................................................................11

90 Fed. Reg. 9821 ............................................................................................................11

The agency record confirms that the Department of Commerce (the "Department"), through its actions and inactions, forced Prysmian to pay substantial tariffs on aluminum and steel products without refunds to which Prysmian is entitled. The Response in Opposition (the "Response") to Prysmian's Motion for Judgment on the Agency Record (the "Motion") submitted by the United States (the "Government") fails to overcome any of the following conclusions, which are apparent from the record:

1. The Department improperly denied certain exclusion requests Prysmian submitted despite acknowledging the unavailability of domestic substitutes based on national security concerns that it lacked authority to consider and that were unsupported by the record.

2. The Department improperly refused to add Prysmian's importing agent as an authorized importer of record under a partially approved exclusion request without any legal basis for its decision and in contravention of its own guidance, thereby denying Prysmian the benefit of the exclusion.

3. The Department improperly voided certain requests without even purporting to evaluate Prysmian's entitlement to the requested exclusions and without issuing mandatory decision memoranda responsive to the requests.

As set forth below and in the Motion, the Department has, thus, taken actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" in violation of 5 U.S.C. § 706(2) and has "unlawfully withheld or unreasonably delayed" agency action by refusing to satisfy its unambiguous duties in violation of 5 U.S.C. § 706(1). Prysmian is, therefore, entitled to judgment on the agency record.

**ARGUMENT**

I. **The Department's denials of ER 261115 in full and ER 261137 in part based on invalid and unauthorized national security considerations were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."**

Proclamation 9704 and the Department's Rule authorize the department to ***grant*** tariff exclusions if ***any one*** of the following three criteria is satisfied: (1) the article described in the request is not "produced in the United States in a sufficient and reasonably available amount," (2) the article not produced in the United States in "a satisfactory quality," or (3) "***specific national security considerations***" warrant ***granting*** the request notwithstanding the availability of domestic substitutes. 83 Fed. Reg. 46058 (emphasis added).

The Government does not contest that domestic suppliers could not satisfy Prysmian's needs for the aluminum products at issue in ER 261115 and ER 261137. Nor could it, because the record establishes that the Department affirmatively and unqualifiedly determined that these aluminum products were "not produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality." (DN 42-1 at 5, 86; *see also* DN 42-1 at 86 ("BIS accepts ITA's recommended findings as to the domestic availability of the product.")). Having determined that Prysmian could not secure domestic substitutes for the aluminum products at issue in ER 261115 and ER 261137, the Department was obligated under both Proclamation 9705 and the Rule to grant these exclusion requests. 83 Fed. Reg. 46058.[1]

---

[1] The Government states that "The President authorized, but did not mandate, that Commerce provide relief from the tariff based on whether the product at issue is 'produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality' and '*based upon specific national security considerations*.'" (Response at 16 (emphasis in original).) To the extent the Government is arguing that the Proclamation granted the Department discretion to deny an exclusion request even where a requester satisfied eligibility criteria mandated by the Proclamation, that is inaccurate. *See* Proclamation 9704 (providing that the Secretary "***shall*** issue procedures for the requests for [tariff] exclusion" (clause 4), and "[s]uch relief ***shall*** be provided for an aluminum article," upon successful application by an exclusion requester (clause 3).

2

The Department nevertheless denied ER 261115 in full and ER 261137 in part purely on national security grounds—namely, the United States' purported interest in imposing economic costs on Russia in response to its invasion of Ukraine. (DN 42-1 at 3 and 86-87.) The Department's denials are legally unsustainable because the Department lacked authority to deny Prysmian's requests for national security reasons and because the national security concerns the Department invoked are unsupported by the record or common sense.

### A.   The Department lacked authority to deny exclusion requests on national security grounds.

In a section titled, "Criteria used to review exclusion requests," the Rule identifies "specific national security considerations" as one of three criteria the Department must assess when considering an exclusion request. *Id.* By its plain terms, the Rule authorizes the Department to ***grant—not to deny***—tariff exclusions based on national security considerations. Specifically, the Rule provides the following explanation for how the "national security" criterion should be applied:

> The exclusion review criterion "or for specific national security considerations" is intended to allow the U.S. Department of Commerce, in consultation with other parts of the U.S. Government as warranted, to make determinations whether a particular exclusion request ***should be approved*** based on specific national security considerations.

*Id.* (emphasis added).

The Rule proceeds to offer the following example demonstrating how the national security criteria should be applied to ***grant*** an exclusion request:

> For example, if the steel included in an exclusion request is needed by a U.S. defense contractor for making critical items for use in a military weapons platform for the U.S. Department of Defense, and the duty or quantitative limitation will prevent the military weapons platform from being produced, the exclusion will likely be granted. The U.S. Department of Commerce, in consultation with the other parts of the U.S. Government as warranted, can consider other impacts to U.S. national security that may result from not approving an exclusion, e.g., the unintended impacts that may occur in other downstream industries using steel.

3

*Id*. The Rule unambiguously does not authorize the Department to deny requests for tariff exclusions based on national security considerations, nor does Proclamation 9704. *See id.*

Seeking to avoid this conclusion, the Government points to general provisions of Section 232 of the Trade Expansion Act of 1962 and Proclamation 9704 stating that the reason the President can and did impose tariffs on aluminum imports is to protect national security. (Response at 16-17.) The Government infers from such statements of general purpose that the Department must, necessarily, have the authority to deny exclusion requests on national security grounds. (*Id.*) The general statements of purpose the Government cites do not say this, of course. And well settled canons of construction make clear that such general provisions cannot override the plain meaning of the specific provisions explicitly stating that the national security criterion can only be applied to grant exclusion requests. *See Arzio v. Shinseki*, 602 F.3d 1343, 1347 (Fed. Cir. 2010) ("A basic tenet of statutory construction is that a specific statute takes precedence over a more general one. . . . This canon of construction applies to the interpretation of regulations as well as statutes.").[2]

Indeed, it makes good sense that Proclamation 9704 and the Department's Rule do not permit the Department to deny an exclusion request on national security grounds, since an alternative rule would defeat the purpose of the exclusion process. In Proclamation 9704, the President declared aluminum importation *itself* a threat to national security, and he declared that "this tariff is necessary and appropriate to address the threat that imports of aluminum articles pose to the national security." (Proclamation 9704, clauses 4, 7.) Since the Proclamation, thus, deems *any* aluminum import to threaten national security, Commerce would necessarily be required to

---

[2] To the extent 15 C.F.R. Pt. § (h)(2)(ii) (codified at 83 Fed. Reg. 46059) cited by the Government in its Response can be read to permit the Department to deny an exclusion request on national security grounds, this provision, by its terms, applies only "if an exclusion request's 30-day comment period . . . has expired and no objections have been submitted." Since objections were made to both ER 261115 and ER 261138, this provision does not apply.

deny *all* exclusion requests if national security concerns served as a basis for the denial of a tariff exclusion, nullifying both the Proclamation and the Rule.

The Court should reject such an absurd result and should set aside as unlawful the Department's denials of ER 261115 and ER 261137 on national security grounds it lacked authority to consider. *Policy & Research, LLC v. United States Dep't of Health & Human Servs.*, 313 F. Supp. 3d 62, 83 (D.D.C. 2018) ("Under the most elementary precepts of administrative law, an agency . . . cannot undertake to act in a manner that is contrary to its own regulations.").

**B.    The national security concerns cited by the Department in its denials are unsupported by the record or common sense.**

Apart from its lack of authority to consider national security in denying Prysmian's requests, the Department's expressed national security concerns arising from Russia's invasion of Ukraine lack any foundation in the record or common sense. First, the administrative record does not contain a single document supporting or even mentioning the Department's determinations that granting ER 261115 and 261137 would undermine national security or that the "aluminum industry plays key defense and wealth generation roles in Russia." (DN 42-1 at 3 and 86-87.) This, by itself, warrants setting aside the Department's decisions. *In re Sang Su Lee,* 277 F.3d 1338, 1346 (Fed. Cir. 2002) ("Sound administrative procedure requires that the agency . . . present its reasoning in sufficient detail that the court may conduct meaningful review of the agency action.").

Second, the Government's argument ignores the pertinent timeline. ER 261115 and ER 261137 were both filed on November 10, 2021—long before Russia invaded Ukraine on February 24, 2022. The Department contends that the date on which Prysmian filed its requests is of no consequence, since "at the time of Commerce's decisions, Russia had invaded Ukraine." (Response at 18.) This argument ignores, however, that Prysmian had already purchased the subject aluminum rod when the Department rendered its decisions, meaning that the denials

5

imposed no economic costs on Russia.[3] It is true that the agency record contains no information showing that the denials imposed no economic costs on Russia, but just a modicum of common sense proves it true. The imports subject to those exclusion requests had already lawfully happened well before Russia invaded Ukraine. It is axiomatic, then, that denying the exclusion requests imposed no economic costs on Russia, and the Department's contention to the contrary makes absolutely no sense. The material was already purchased and the tariffs paid by Prysmian. Thus, Prysmian, a domestic manufacturing company, is the only party on which the denials imposed economic costs. The denials had no effect on Russia whatsoever. How could they?

The Government also overlooks that the Department issued its denials well after the 106-day period set by the Rule for the Government to render its decisions. *See* 83 Fed. Reg. 46060 ("The review period normally will not exceed 106 days."). Its decision on ER 261115 was rendered on July 31, 2022 (157 days late), and its decision on ER 261137 was rendered on February 12, 2023 (353 days late). Had the Department complied with the timeline specified in the Rule, it would have rendered its decision before the date that Russia invaded Ukraine.

Thus, even if the Department had authority to deny exclusion requests based on national security considerations (it does not), the denials should still be set aside. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (agency decision-making is arbitrary and capricious where the agency "offered an explanation for its decision that runs counter to the evidence before the agency.").

---

[3] The Government states that Prysmian must accept "the consequences" of its "decision to purchase aluminum rod from Russia before it knew whether its exclusion requests would be granted." (Response at 19.) But Prysmian had no choice but to proceed with its purchases before the Department's determinations because (1) the aluminum products at issue were not domestically available, as the Department ultimately found, and, (2) as the U.S. Government Accountability Office determined, the Department's persistent "process[ing of] exclusion requests in an untimely manner" resulted in a "backlog of requests" and "long waiting periods" requiring companies to "bear the financial burden of the tariffs paid on steel and aluminum products already import for a longer period until they receive a decision and can request a refund." https://www.gao.gov/assets/gao-20-517.pdf at 35.

**II.    The Department's improper refusal to add Concord as an authorized importer of record under partially approved ER 261137 should be set aside as unlawful, and the Secretary should be compelled to perform his unambiguous duty to add Concord to the granted exclusion.**

   **A.    The Department had no legal basis for refusing to add Concord as an authorized importer of record.**

The Response confirms what the administrative record made clear: the Department had no legal basis for its refusal to add Prysmian's importing agent, Concord, as an authorized importer of record under partially approved ER 261137. The Department justified its refusal on the exclusion window being closed when Prysmian submitted its request. (DN 42-1 at 195.) But in response to Prysmian's repeated inquiries, the Department could not cite any law providing that the expiration of an exclusion window precludes the addition of an importer of record as to purchases made while the exclusion window was open. (DN 42-1 at 0196 –202.).

The Government is similarly unable to identify any legal authority supporting the Department's stated rationale. The sole evidence the Government musters in support of its contention that the Department had an "established practice" of declining to add importers of record after the close of an exclusion window is a single entry in an internal BIS checklist related to importer of record changes, which states that "[c]hanges to expired exclusions can't be processed." (DN 42-1 at 187.) This is not legal authority, however, and the checklist itself fails to cite any legal basis for this assertion. (*Id.*) Contrary to the Government's position that importer of record changes could "only apply prospectively" (Response at 12), the Department's own guidance recognizes that a change to the importer of record is a "non-substantive change" that should be permitted even "after the exclusion request has been granted." (DN 42-1 at 176; *see also* DN 42-1 at 79 (Department Frequently Asked Questions, which provides that "[i]f your company was granted an exclusion request, then you may make changes to the importer of record.").)

7

Because the Department's decision rests on nothing more than its "because-I-said-so" rationale, this Court should hold unlawful and set aside the Department's refusal to add Concord as an importer of record under partially approved ER 261137. *In re Sang Su Lee*, 277 F.3d at 1344 ("For judicial review to be meaningfully achieved . . . the agency tribunal must present a full and reasoned explanation of its decision.")

      **B.**      **The Court should compel the Department to perform its unambiguous duty to add Concord as an authorized importer of record under ER 261137.**

The Government argues that, because this Court previously dismissed unrelated claims Prysmian asserted under Section 706(1), the law of the case doctrine precludes Prysmian from seeking an order pursuant to Section 706(1) compelling the Secretary, on behalf of the Department, to satisfy his unambiguous duty to add Concord as an authorized importer of record under ER 261137. The Government's reliance on the law of the case doctrine is misplaced.

"The law of the case doctrine provides that when a court decides upon a rule of law, that decision should continue to govern the *same* issues in subsequent stages in the same case." *Del Mar v. United States*, 173 Fed.Cl. 159, 165 (Fed. Cir. 2024) (emphasis added). The doctrine does not prohibit litigation of issues not "presented [or] decided in a former proceeding in the case." *Halpern v. Principi*, 384 F.3d 1297, 1301 (Fed. Cir. 2004). Critically, "where, as here, a plaintiff has filed an amended complaint following an earlier ruling, the law of the case doctrine does not apply to the extent that the plaintiff has offered new claims or factual allegations." *City of Philadelphia v. Bank of Am. Corp.*, 609 F. Supp. 3d 269, 281 (S.D.N.Y. 2022).

Prysmian's Section 706(1) claims previously dismissed by this Court asserted that, in issuing decision memoranda denying certain tariff exclusion requests, the Department had failed to apply mandatory eligibility criteria to the record evidence, to issue reasoned decisions responsive to the facts presented, and to notify Customs and Border Protection ("CBP") to refund

8

tariffs previously paid. (*See* DN 25 at 7-9.) In dismissing these claims, the Court relied on the Supreme Court's decision in *Norton v. Southern Utah Wilderness All.*, 542 U.S. 55 (2004) ("SUWA") to hold that the Department had affirmatively denied Prysmian's exclusion requests rather than withholding action on them, thus precluding relief under § 706(1) (*Id.* at 8).

Count 4 of Prysmian's Second Amended Complaint asserts, pursuant to Section 706(1), that the Department unlawfully withheld agency action by refusing to add Concord as an authorized importer of record. This new claim relies on factual allegations entirely distinct from those underlying Prysmian's prior Section 706(1) claims, and the Court neither decided nor addressed the issues raised in Prysmian's new claim in its prior rulings. As such, the law of the case doctrine has no application.

Moreover, unlike the Department's denials of the exclusion requests at issue in Prysmian's earlier Section 706(1) claims, which were formalized in decision memoranda as required by the Rule, the Department has not "formally reject[ed]" a request by Prysmian to add Concord as an importer of record. *See SUWA*, 542 U.S. at 63 (distinguishing between a "denial," which is not actionable under Section 706(1), and "the omission of an action without formally rejecting a request," which is actionable under Section 706(1)). Rather, the Department simply previewed in informal email exchanges that it would not perform its duty. (DN 42-1 at 195-202.) The Department has, thus, "withheld agency action" within the meaning of § 706(1).

Because Prysmian's request to add Concord as an authorized importer under ER 261137 was proper and authorized by the Department's own FAQs, which recognize such changes as ministerial, this Court should order the Secretary, on behalf of the Department, to satisfy his unambiguous duty to add Concord as an authorized importer of record under ER 261137 pursuant to 5 U.S.C. 706(1). *SUWA*, 542 U.S. at 63-64 (stating that courts should compel agencies to

9

perform "ministerial or nondiscretionary" acts they have failed to undertake despite being "legally required" pursuant to 5 U.S.C. § 706(1)).

**III.    The Court should set aside as unlawful the Department's decision to void ER 402427 and ER 391723 and should compel the Secretary to perform his unambiguous duties to evaluate Prysmian's entitlement to the requested exclusions and issue reasoned decision memoranda.**

The administrative record confirms that the Department failed to perform its unambiguous duties to evaluate Prysmian's satisfaction of the eligibility criteria for obtaining tariff exclusions with respect to ER 391723 and ER 402427 and to issue a decision memorandum responsive to those requests. Instead, the Department voided ER 402427 and ER 291723 via a generic "blast email" based on an indefensible and incorrect interpretation of Presidential Proclamations 10895 and 10896. The Response simply regurgitates the Department's flawed interpretation of the Proclamations at issue and fails to challenge Prysmian's entitlement to the relief it seeks.

**A.    The Department's application of Proclamations 10895 and 10896 to void Prysmian's pending exclusion requests was contrary to their plain meaning and violated the presumption against retroactivity.**

The Response interprets Proclamations 10895 and 10896, issued on February 10, 2025, as having revoked the Department's "authority to grant any exclusion requests, *pending or otherwise*, as of February 10, 2025." (Response at 23 (emphasis added).) According to the Government, the Department was, therefore, justified in applying the Proclamations retroactively to void ER 402427 and ER 391723, both of which were pending when the Proclamations were issued, without assessing Prysmian's entitlement to the requested exclusions or issuing decision memoranda on the merits. The Department's interpretation of Proclamations 10895 and 10896 is irreconcilable with their plain meaning and violates the presumption against retroactivity.

10

> *1.     The text of Proclamations 10895 and 10896 is clear that they apply prospectively to prohibit the Department from considering only new exclusion requests, not those pending when the Proclamations were issued.*

The Government rests its argument for retroactive application of Proclamations 10895 and 10896 on the appearance of the words "hereby revoked" in each, as well as language stating that the Proclamations will take effect on February 10, 2025, the date of their enactments. The Government's argument ignores, however, that what the Proclamations "hereby revoked" as of their effective date was the Department's authority to grant *new* exclusion requests—not its authority to grant exclusion requests pending when the Proclamations were issued.

Each Proclamation makes clear that it applies prospectively by prohibiting the Department from considering new exclusion requests on a going forward basis.

Proclamation 10895 states as follows:

> The Secretary shall not consider any *new product exclusion requests* [relating to imports of aluminum], or renew any such product exclusions in effect as of the date of this proclamation. Granted product exclusions shall remain effective until their expiration date or until excluded product volume is imported, whichever occurs first.

90 Fed. Reg. 9812 (emphasis added). Proclamation 10896 similarly provides that "the Secretary shall not consider any product exclusion requests or renew any product exclusion requests in effect" as of the date of the Proclamations issuance; that "[g]ranted product exclusions shall remain effective until their expiration date or until excluded product volume is imported, whichever occurs first;" and that "*following this proclamation* . . . imports of any steel article . . . will be available to U.S. importers, provided that the additional ad valorem tariffs are paid." 90 Fed. Reg. 9821 and 9825 (emphasis added).)

The Government's proffered interpretation of the Proclamations is belied by an internal BIS memorandum acknowledging that each Proclamation, by its plain terms, calls for prospective application to *new* exclusion requests. (DN 42-7 at 62 ("Presidential Proclamations 10895 and

11

10896 of February 10, 2025 direct that the Secretary shall not consider ***any new*** Section 232 Exclusion Requests . . . .") (emphasis added).).

Accepting the interpretation offered by the Response would lead to absurd results where parties who filed equally meritorious exclusion requests on the same day experience different outcomes based simply on the order in which the Department chose to process their requests. Such disparate treatment of identical situations without regard for the underlying merits fits the definition of "arbitrary." Black's Law Dictionary (12 ed. 2024) (defining "arbitrary" as "involving a determination made without consideration of or regard for facts [or] circumstances.") Indeed, here, ER 391723 had been pending for 169 days and ER 402427 had been pending for 386 days when the Proclamations were issued, well over the 106 days the Department states exclusion request reviews should take. Had the Department processed those requests within its own stated review window, they would have been approved well before the Proclamations were issued.

Proclamations 10895 and 10896 provide no authority for the Department's decision to void ER 402427 and ER 391723 because those requests were submitted prior to, and were pending at the time of, the Proclamations' issuance. As such, the Court should set aside and hold unlawful the Department's decision. *Solenex, LLC v. Haaland*, 626 F. Supp. 3d 110, 126 (D.D.C. 2022) (an agency decision that "was predicated on an incorrect interpretation of the law . . . must be set aside" pursuant to 5 U.S.C. 706(2)).

> 2. *The Government's call for retroactive application of Proclamations 10895 and 10896 violates the deep-rooted presumption that laws should not be applied retroactively.*

It is well settled that "[r]etroactivity is not favored in the law." *Hicks v. Merit Sys. Prot. Bd.*, 819 F.3d 1318, 1321 (Fed. Cir. 2016). Grounded in "fundamental notions of justice" and "what is fair," the presumption against retroactivity provides that a law must be applied "only prospectively" unless its text permits no reasonable interpretation except that the lawmaker

12

intended the law to apply retroactively. *See Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 842, 855-56 (1990) (J. Scalia, concurring); *see also N. Am. Foreign Trading Corp. v. U.S.*, 600 F. Supp. 226, 230 (Ct. Int'l Trade 1984) ("[O]nce Congress delegates authority to the President, it is the President's intent which determines whether an executive order is to be retroactive.").

For retroactive application to be appropriate, "the words used [must be] so clear, strong and imperative that no other meaning can be annexed to them." *United States Fidelity & Guaranty Co. v. United States ex rel. Struthers Wells Co.,* 209 U.S. 306, 314 (1908); *Lindh v. Murphy*, 521 U.S. 320, 328 n.4 ("[C]ases where this Court has found truly 'retroactive' effect adequately authorized by a statute have involved statutory language that was so clear that it could sustain only one interpretation.").

As noted above, the Government claims that statements in the Proclamations providing that they will take immediate effect demonstrate an intent that the Proclamations should apply retroactively. But the Supreme Court has explicitly held that "[a] statement that a statute will become effective on a certain date does not even arguably suggest that it has any application to conduct that occurred at an earlier date." *Landgraf v. USI Film Prods.,* 511 U.S. 244, 257 (1994). Far from reflecting unambiguous intent that they should be given retroactive effect, Proclamations 10895 and 10896 each expressly call for prospective application to *new* exclusion requests. Accordingly, the Department's decision to apply the Proclamations retroactively by voiding ER 402427 and ER 391723 should be set aside as unlawful. *Solenex*, 626 F. Supp. 3d at 126.

B.   **The Court should compel the Secretary to perform his unambiguous duties to evaluate Prysmian's entitlement to the requested exclusions and issue reasoned decision memoranda.**

Once again, the Government argues that the law of the case doctrine precludes this Court from even considering Prysmian's claim pursuant to Section 706(1) that the Department

13

unlawfully withheld agency action by voiding ER 402427 and ER 391723 rather than deciding those requests on the merits. (Response at 14-16.) According to the Government, "Commerce issued decisions denying both requests," and this "Court has already held that Prysmian cannot assert a claim under 5 U.S.C. § 706(1) when Commerce denies a request made by Prysmian." (*Id.*)

But "decide" and "deny" are the precise actions the Department did not, and, indeed, said it would not, perform with respect to ER 402427 and ER 391723. When it voided those requests via its February 11, 2025 blast email, the Department stated as follows:

> Pursuant to Presidential Proclamation, Commerce ***is no longer processing*** Section 232 Exclusion Requests effective 11:59 PM Eastern Time on February 10, 2025. Section 232 Exclusions that have already been granted will remain effective until their expiration date or until their excluded volume is exhausted, whichever occurs first. Pending Section 232 Exclusion Requests should be assumed ***void pending their rejection and/or denial by Commerce***.

(DN 42-7 at 66) (emphasis added).

In other words, ER 402427 and ER 391723 ***were not*** rejected or denied. (*Id.*) Rather, they were "voided" and, thereby rendered "of no legal effect" and "absolute nullit[ies]." *See* Black's Law Dictionary (12 ed. 2024) (defining "void"). Unlike Prysmian's previously dismissed Section 706(1) claims, which concerned denials where the Department had issued decision memoranda at least purporting to consider Prysmian's entitlement to the requested tariff exclusions, the Department's blast email did not even claim to have evaluated whether ER 402427 and ER 391723 satisfy the eligibility criteria established by the Rule. As such, the law of the case doctrine does not bar Prysmian from asserting Count 6, since that claim relies on factual allegations distinct from those at issue in Prysmian's previously dismissed claims.

Nor did the Department's post hoc decision memoranda issued on March 11, 2025—***after*** the Department had already voided the requests—cure the February 11, 2025 blast email's legal defects, since they explicitly state that they, too, were rendered "without any determination on the

14

merits of the specific exclusion request or its associated record in the Section 232 Exclusions Process." (DN 42-2 at 3; DN 42-7 at 2.) Thus, the Department, by its own admission, never rendered a decision on the merits of either ER 402427 or ER 391723 as it was required to do by its own Rule.

The Department has no justification for its refusal to satisfy its unambiguous duties to evaluate whether ER 402427 and ER 391723 satisfy the eligibility criteria established by the Rule for obtaining exclusions and to issue mandatory decision memoranda responsive to the requests. This Court should therefore compel the Secretary to perform these "nondiscretionary" acts he is "legally required" to undertake. 5 U.S.C. § 706(1); *SUWA*, 542 U.S. at 63-64.

## CONCLUSION

The matter concerns three overarching failures by the Department to lawfully carry out its duties. First, the Department improperly denied certain exclusion requests Prysmian submitted despite acknowledging the unavailability of domestic substitutes based on national security concerns that it lacked authority to consider and that were unsupported by the record. Second, the Department improperly refused to add Prysmian's importing agent as an authorized importer of record under a partially approved exclusion request without any legal basis for its decision and in contravention of its own guidance, thereby denying Prysmian the benefit of the exclusion. Finally, the Department improperly voided certain requests without even purporting to evaluate Prysmian's entitlement to the requested exclusions and without issuing mandatory decision memoranda responsive to the requests. For the foregoing reasons and those set forth in the Opening Memorandum, Prysmian's Motion for Judgment on the Agency Record should be granted.

Dated: August 15, 2025  
Lexington, Kentucky

Respectfully submitted,

*/s/Brad S. Keeton*  
Brad S. Keeton  
FROST BROWN TODD LLP  
Lexington Financial Center  
250 W. Main Street, Suite 2800  
Lexington, KY 40507  
(859) 231-0000  
bkeeton@fbtlaw.com  
*Counsel for Plaintiff Prysmian*  
*Cables and Systems, USA, LLC*

## CERTIFICATE OF COMPLIANCE

Pursuant to Chambers Procedure 2(B), the undersigned certifies that Plaintiff's Reply Memorandum of Law in Support of Motion for Judgment on the Agency Record, filed on August 15, 2025, complies with the word limitation requirement. The word count for Plaintiff's Reply Memorandum of Law, as computed by undersigned counsel's word processing system, is 5,772 words.

*/s/Brad S. Keeton*  
Counsel for Plaintiff Prysmian  
Cables and Systems, USA, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2025, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record:

*/s/Brad S. Keeton*  
Counsel for Plaintiff Prysmian  
Cables and Systems, USA, LLC

2799560.0783731   4898-5222-3582v6